Cecelia ROLESON *v.* STATE of Arkansas

CR 82-12                                          640 S.W.2d 113

Supreme Court of Arkansas
Opinion delivered October 11, 1982
[Rehearing denied November 8, 1982.]

150

*Robert E. Young* of *Rhine, Rhine & Young,* court appointed, and *Walter Davidson* of *Davidson, Plastiras, Horne, Hollingsworth & Arnold, pro bono,* for appellant.

*Steve Clark,* Atty. Gen., by: *Theodore Holder,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. Cecelia Roleson was convicted of being an accomplice in the murder of Carl Lipe, which occurred around midnight, April 27, 1979, in rural Greene County, Arkansas. Cecelia Roleson and her former husband, Jerry Roleson, were convicted of the murder in a joint trial in 1980, but we reversed her conviction because of three procedural errors; we dismissed Jerry Roleson's conviction because of lack of evidence to corroborate the testimony of still another accomplice to the murder. *Roleson v. State,* 272 Ark. 346, 614 S.W.2d 656 (1981). On retrial, the jury convicted Cecelia Roleson of first degree murder and sentenced her to life imprisonment. On appeal she raises fifteen allegations of error. We find no prejudicial error was committed and affirm her conviction.

Carl Lipe was shot and killed on a rural road about midnight April 29, 1979. There were no witnesses to the murder. Lipe's wife, Rosa, the other accomplice to the murder, was the State's chief witness against Cecelia Roleson in both trials.

The Lipes became acquainted with the Rolesons when they moved to a house behind the Rolesons' grocery store in Marmaduke, Arkansas. Rosa Lipe testified that she began to confide in Cecelia, and that they became sexually intimate. She said that Cecelia wanted to set up a prostitution business and wanted the Lipes' help because they had once been in that business. Cecelia later decided that Carl Lipe would impede the plan and wanted him killed. Several times before Carl's murder, Cecelia gave Rosa poison to give to her husband, but Rosa said that she had only given it to him once.

On the day of the murder, a Friday, Cecelia told Rosa that she and her husband would visit the Lipes that night and said, "Tonight is the night." The Rolesons did visit the Lipes, and Cecelia, her stepchildren and Rosa went to Paragould and ate. The children were taken home and Rosa and Cecelia drove to the Lipes' home. When Cecelia saw that the Lipes' automobile was not there she said, "I've got to make a run." She and Rosa drove for a while and Cecelia stopped when she said that she saw a flashlight. Jerry Roleson got in the car, said he had just killed Carl Lipe and described how he had done it. The three drove to a bridge and threw out a pistol and Jerry's tennis shoes. Cecelia took Rosa home and told her to pretend to wait up for Carl and then call the police early that morning, which Rosa did.

Two turkey hunters found Lipe's body early the next morning. After questioning by the police, Rosa Lipe eventually agreed to cooperate and showed them the slough where the gun was thrown. A 380 Baretta was found and identified as the weapon that killed Lipe.

Bill Bushong, a Pepsi-Cola route man, testified that he had given the Baretta to Cecelia in exchange for an old car after she had repeatedly asked him to get a gun for her for

protection. Bushong also testified that Cecelia indicated to him that she wanted Lipe killed becuse he was interfering with a prostitution business she hoped to start, which would involve herself, Rosa, and Jerry Roleson. Bushong said that Cecelia told him on the Wednesday after the murder that her husband had killed Lipe. Bushong also said that before the trial Cecelia had approached him, asking him to change his testimony. There was other evidence that Cecelia had been looking for a gun and was planning to become involved in prostitution. Mark Reed testified that Cecelia had asked him to perjure himself by saying that Cecelia had asked for the gun for Rosa. Both men admitted to having affairs with Cecelia Roleson.

The defense essentially maintained that either Rosa Lipe killed her husband or that someone besides the Rolesons killed him. Jerry Roleson testified that he and Cecelia did go to the Lipe home the night of the murder but that he left with Cecelia and Rosa. He said he last saw his wife and Rosa together about 9:30 p.m. when they took him home and that he went in and went to bed. He conceded that his wife had talked to him about setting up a prostitution ring, but denied that he was involved in the murder.

Cecelia Roleson denied any guilt but made some damaging admissions. She admitted that Bushong had given her the gun after she asked for it several times. But she testified she was asking for it for Rosa. She did concede, however, that Bushong took an old car belonging to her shortly after he gave her the gun, just as Bushong testified. She admitted that she had lied on three occasions to police officers when first asked about the gun. She had denied any knowledge of a gun and denied she ever asked anyone for one. She also admitted she had talked to both her husband and Bushong about a prostitution ring.

The defense emphasized evidence that Carl Lipe's life insurance was increased approximately two weeks before the murder, from $5,000 to $16,500. There was also evidence the Lipes intended to buy the grocery store. Rosa testified that the Rolesons were having financial problems and that she

and Carl offered to buy the store. The Rolesons were asking $8,000 and the Lipes gave them a down payment of $500.00.

The State's theory was that Cecelia Roleson master-minded the murder and there was strong evidence that Cecelia was a domineering and strong-willed person. Rosa Lipe testified she was afraid of Cecelia because she had threatened the safety of her child, and because she wanted to conceal their sexual relationship.

This is essentially the evidence viewed in the light most favorable to the State, which is the view that must be taken on appeal. *Fountain* v. *State,* 273 Ark. 457, 620 S.W.2d 936 (1981). Obviously the jury resolved the issue of credibility against Cecelia Roleson and her witnesses and there is substantial and convincing evidence of her guilt.

The first argument on appeal is that Cecelia Roleson cannot be guilty as an accomplice since the charges against her husband, the principal, were dismissed. That was the common law rule. *Ray* v. *State,* 102 Ark. 594, 145 S.W.2d 881 (1912). The Arkansas law was drafted precisely to close this loophole in the law. Ark. Stat. Ann. § 41-304 (2) (Repl. 1977) reads:

> In any prosecution for an offense in which the liability of the defendant is based on conduct of another person, it is no defense that:

> (2) the other person has not been charged with, prosecuted for, convicted of, or has been acquitted of, any offense or has been convicted of a different offense or degree of offense, based upon the conduct in question; . . .

Roleson also argues she cannot be an accomplice since she was not present when the murder took place. That is simply not a correct statement of the law. Roleson cannot disclaim responsibility because she did not take part in each act that made up the whole crime. *Andrews* v. *State,* 262 Ark. 190, 555 S.W.2d 224 (1977). The statute does not contemplate that a person is an accomplice only if he is present at the

scene of the crime. No such construction can be placed on the statute's plain language. An accomplice is defined in Ark. Stat. Ann. § 41-303 (Repl. 1977) as:

(1) A person is an accomplice of another person in the commission of an offense, if with the purpose of promoting or facilitating the commission of an offense, he:

(a) solicits, advises, encourages or coerces the other person to commit it; or

(b) aids, agrees to aid, or attempts to aid the other person in planning or committing it; or

(c) having a legal duty to prevent the commission of the offense fails to make a proper effort to do so.

(2) When causing a particular result is an element of an offense, a person is an accomplice in the commission of that offense if, acting with respect to that result with the kind of culpability sufficient for the commission of the offense, he

(a) solicits, advises, encourages or coerces another person to engage in the conduct causing the result; or

(b) aids, agrees to aid, or attempts to aid another person in planning or engaging in the conduct causing the result; or

(c) having a legal duty to prevent the conduct causing the result, fails to make proper effort to do so.

Three arguments of error by the defense counsel may be answered together: the trial judge's refusal to allow the defense to inform the jury that Jerry Roleson's conviction was reversed and dismissed on appeal; his refusal to allow an instruction or any testimony or reference to that fact; and, his refusal to allow the defense to mention that Jerry Roleson was not currently charged. The judge was correct. It was irrelevant to Cecelia Roleson's trial or sentence that Jerry Roleson was released. Indeed it would prejudge the State's right to require Cecelia Roleson to account for her conduct. As Ark. Stat. Ann. § 41-304 (Repl. 1977) states, it is no defense that the other person has been acquitted.

It is argued that Rosa Lipe was improperly allowed to testify that Jerry Roleson told her, ". . . that was the hardest

son of a bitch to kill that he had ever killed," and "he told me that he had killed Carl." The objection is this was hearsay, which, of course, it was. But among the many exceptions to the rule that excludes hearsay is the admissibility of a statement made by a co-conspirator. Ark. Stat. Ann. § 28-1001, Rule 801 (d) (2) (v) (Repl. 1979). *See Smithey* v. *State,* 269 Ark. 538, 602 S.W.2d 676 (1980).

It is argued that Bill Bushong was an accomplice to the murder and the jury should have been so instructed. He was not an accomplice. As we said in *Burke* v. *State,* 242 Ark. 368, 413 S.W.2d 646 (1967):

> The test, generally applied to determine whether or not one is an accomplice, is, could the person so charged be convicted as a principal, or an accessory before the fact, or an aider and abetter upon the evidence? If a judgment of conviction could be sustained, then the person may be said to be an accomplice; but, unless a judgment of conviction could be had, he is not an accomplice.

The only implication of Bushong's guilt comes from Bushong's testimony that Cecelia had once told him she wanted Lipe killed. He said that he thought she was joking. There was also the inconsistent testimony of Cecelia Roleson and it is no more than a suggestion of complicity; certainly there is no substantial evidence of his guilt.

Cecelia Roleson argues that certain testimony by her former husband (they were divorced at the time of trial) violated the privilege for husband/wife confidential communications, as set forth in Ark. Stat. Ann. § 28-1001, Rule 504 (Repl. 1979). Jerry Roleson was permitted to testify that he and his former wife had had personal problems. He also testified that Cecelia once asked him at a nightclub to approach a woman about participating in a prostitution ring. The first instance did not even involve a communication since it was merely a question about Mr. Roleson's personal knowledge of problems he and Cecelia had. The second instance was obviously not intended to be confidential because Cecelia indicated that she wanted the content to

be related to the other woman and there is evidence other people were present when the statement was made. Since neither instance involved a confidential communication, the privilege of Rule 504 does not apply.

The State argues that since the Rolesons were divorced at the time of trial, any husband/wife privilege terminated at the time of the dissolution of the marriage. We do not deem it necessary at this time to decide whether divorce terminated the privilege.

The State used a former deputy sheriff's testimony from the Rolesons' first trial when the court ruled the witness "unavailable" under Ark. Stat. Ann. § 28-1001, Rule 804 (b). Since another deputy sheriff testified who examined the crime scene, the former deputy's testimony was probably not necessary to the State's case; his testimony was merely cumulative. The sheriff's office learned five days before the trial that the witness had left the state and was in Midland, Texas. Evidently the witness and his wife had separated, a fact unknown to the sheriff's office. According to a witness from the sheriff's office, a strong effort was made to locate and produce the witness, but to no avail. The trial court, after hearing testimony that the State made a good faith effort to locate the witness, allowed the testimony. If any error was committed, it was harmless. *See Holloway* v. *State,* 268 Ark. 24, 594 S.W.2d 2 (1980).

The other eight allegations of error concern the discretionary power of the trial judge to make certain rulings and decisions. A court's rulings on matters pertaining to the conduct of trial and the admission of evidence are within the judge's discretion. His rulings will not be set aside absent a manifest abuse of discretion. *Wright* v. *State,* 254 Ark. 39, 491 S.W.2d 390 (1974); *Petty* v. *State,* 245 Ark. 808, 434 S.W.2d 602 (1968).

The defense sought during the trial to call a witness who would say she had overheard Rosa Lipe say, "Well, I had Carl increase his insurance." The State had not been notified of the defense's intention to call the witness. Cecelia Roleson had, in effect, testified to the same and we can find

no prejudice resulting from the court's discretionary ruling in this case. The trial judge found no bad faith or lack of diligence on the part of defense counsel but ruled that it was too late to offer that evidence, referring to local rules which impose on the State, as well as the defense, an obligation to timely name witnesses used before trial. On occasion we have prohibited the State from using such evidence. *Nelson* v. *State,* 274 Ark. 113, 622 S.W.2d 188 (1981).

The defense counsel attempted to cross-examine Rosa Lipe, reading from a prior statement she had made to a polygraph operator. It was, "Have you minimized your involvement with Carl Lipe's death?" Her answer had been "Yes." The State objected to this line of questioning because of a possible mention of the lie detector test. We reversed the first conviction in part because of such a reference. *See Roleson* v. *State, supra.* The court held an in-chambers hearing and allowed both sides an opportunity to argue this question. The trial judge finally decided that this delicate line of questioning should not be pursued. We cannot be critical of the trial court's approach because he bore the responsibility for a mistrial or retrial. It is the trial court's duty to see that no mishaps occur as might have occurred here, and we find no manifest abuse of discretion.

The State was allowed to ask Rosa Lipe and Bill Bushong questions that related to Cecelia Roleson's personality. The answers suggested she was a domineering person. It is argued this was evidence of character and inadmissible under Ark. Stat. Ann. § 28-1001, Rule 404 (a). In support of their argument the defense points out that Roleson had not testified and had not placed her character in evidence. Actually, such evidence does not fit into what is usually considered character evidence or a trait. This was a case involving at least one principal and two accomplices. Each person's role in the crime was relevant in this case. In *Sumlin* v. *State,* 274 Ark. 185, 617 S.W.2d 373 (1981), we referred to evidence that had been presented that Warren Sumlin, an accomplice, exercised control over his wife, Ruth Sumlin, the principal. We can say without doubt the evidence was not prejudicial error. There was other substantial evidence that Cecelia Roleson supplied the gun and was

the key person in the murder. If it was error, it was harmless. *See Chapman* v. *California*, 386 U.S. 18 (1961); *Kitchen* v. *State*, 271 Ark. 1, 607 S.W.2d 345 (1980).

Cecelia Roleson argues that the photographs admitted were inflammatory, prejudicial and irrevelant and require reversal. For a murder case they were unexceptional. We find the trial judge to be correct in admitting them. *Gruzen* v. *State*, 267 Ark. 380, 591 S.W.2d 342 (1979).

The appellant cites three incidents of what she claims is prosecutorial misconduct. One is where the State asked whether the police had promised Rosa Lipe protection. Another incident was a question about an incident at school involving Rosa's son and Cecelia Roleson. The last incident was regarding a question to the Rolesons' son about Rosa's son moving out of town after the murder. The defense neglected to demonstrate how these questions prejudiced the appellant. There was no showing that the trial judge abused his discretion. *See Shepherd* v. *State*, 270 Ark. 457, 605 S.W.2d 414 (1980). The objection to the last question was sustained and the jury was admonished, thereby curing any possible error. *Brewer* v. *State*, 269 Ark. 185, 599 S.W.2d 141 (1980). It is argued in passing that error occurred during the cross-examination of certain defense witnesses and it was error to restrict the direct examination of two defense witnesses. We do not find that the trial court abused its discretion. *See Shepherd* v. *State, supra.*

Both the State and Roleson were represented by able counsel who sought throughout the trial to vigorously represent their respective interests to the fullest, within the rules for the conduct of trials. The trial court was presented with some difficult decisions and virtually every one of those decisions is questioned on appeal. Due process requires a fair trial, not a perfect one and Cecelia Roleson received a fair trial. Any possible errors, and they are only possible in our judgment, did not result in prejudice to the appellant and, therefore, reversal is not required. *See Chapman* v. *California, supra* and *Kitchen* v. *State, supra.*

We have reviewed the entire record as we are required to do, and have found no prejudicial errors.

Affirmed.