# T. J. HAYES *v.* STATE of Arkansas

CR 82-113                                     645 S.W.2d 662

Supreme Court of Arkansas
Opinion delivered January 24, 1983
[Rehearing denied February 28, 1983.]

*Leon N. Jamison* of *Jamison & Glover*, for appellant.

*Steve Clark*, Atty. Gen., by: *Matthew Wood Fleming*, Asst. Atty.Gen., for appellee.

RICHARD B. ADKISSON, Justice. This is the second time that appellant, T. J. Hayes, has been convicted by a jury of the capital felony murder of his girlfriend, Catherine Carter, and a cab driver, J. W. Lunsford, and sentenced to death. On the first appeal we reversed and remanded, *Hayes v. State*, 274 Ark. 440, 625 S.W.2d 498 (1981). We now affirm.

At trial, the girlfriend's parents testified that on the afternoon of July 16, 1979, appellant and their daughter, who were both black, were at their home in Pine Bluff. By previous agreement with the Yellow Cab Company, a cab was to pick the daughter up for work at about 2:30 p.m. each afternoon. On that particular day when the cab with a white male driver arrived, their daughter and appellant got into the cab. At approximately 2:30 p.m. that same afternoon a security officer on duty in front of the Arkansas Department of Correction Administration Building saw appellant and a black female in Yellow Cab No. 11, driven by a white male, pass by going about 20 miles per hour on Princeton Pike.

According to a statement appellant gave to the police, he told the cab driver to drive out on Princeton Pike where they stopped at an unoccupied house. All three got out, and appellant, who was armed with a .38 caliber pistol, told the cab driver to go back to town. The cab driver made a move as though he was attempting to disarm appellant, and appellant shot him twice. Appellant and the girlfriend then

entered the house, where the girlfriend told him to forget her, that she did not want to see him anymore because she was interested in someone else. Appellant shot her twice. Appellant then drove the cab to Townsend Park and hid it in a wooded area.

At about 3:30 p.m. the security officer saw appellant driving the cab in which he had seen the three of them earlier. Later that day between 4:15 p.m. and 4:30 p.m. appellant walked into the Jefferson County Sheriff's Office and announced that he wanted to turn himself in saying, "I think I just killed my girlfriend." He then led officers of the Pine Bluff Police Department to the scene of the crime and to the place where he had hidden the cab. About 7:30 p.m. that evening, after being fully advised of his rights, he gave a statement to officers from the sheriff's office and signed a waiver form. We find sufficient evidence to support the jury's finding that appellant was guilty as charged.

Appellant argues: that he was denied an impartial jury because the jury selected was "death qualified" and therefore was biased in favor of the prosecution; and that the Arkansas death penalty is unconstitutional. This court has consistently rejected each of these arguments. *Coble* v. *State*, 274 Ark. 134, 624 S.W.2d 421 (1981); *Simpson* v. *State*, 274 Ark. 188, 623 S.W.2d 200 (1981); *Miller* v. *State*, 269 Ark. 341, 605 S.W.2d 430 (1980), *cert. denied*, 450 U.S. 1035, 101 S. Ct. 1750 (1981); *Williams* v. *State*, 276 Ark. 399, 635 S.W.2d 265 (1982). *Collins* v. *State*, 261 Ark. 195, 548 S.W.2d 106 (1977); *Swindler* v. *State*, 267 Ark. 418, 592 S.W.2d 91 (1979).

Appellant argues that he has not been accorded equal protection of the law in violation of the United States Constitution Amendment 14 because the speedy trial provisions of A.R.Cr.P. Rules 28.1—30.2, Ark. Stat. Ann., Vol. 4A (Repl. 1977) distinguish between persons serving a term of imprisonment on another conviction while awaiting trial on the principal charge (must be brought to trial within eighteen months), and persons incarcerated as a result of the principal charge to be tried (must be brought to trial within eighteen months, but entitled to release from incarceration after nine months). We reject this argument because neither

is entitled to absolute discharge until after eighteen months under Rule 30. Furthermore, appellant has failed to show any prejudice resulting from his incarceration prior to trial.

Appellant's other arguments regarding his right to a speedy trial were resolved on his first appeal, *Hayes* v. *State, supra* and will not be considered again.

Appellant argues that the trial court erred in admitting certain photographs and slides which were allegedly redundant and introduced solely to inflame the jury. Even inflammatory photographs are admissible in the sound discretion of the trial court if they tend to shed light on any issue or are useful to enable a witness to better describe the objects portrayed or the jury to better understand the testimony. *Sumlin* v. *State,* 266 Ark. 709, 587 S.W.2d 571 (1979). Here, the trial court could have concluded that the photographs and slides would help the jury to understand the crime scene, the sequence of events, and the nature of the wounds inflicted. Also, a photograph is not rendered inadmissible merely because it is cumulative. *Prunty* v. *State,* 271 Ark. 77, 607 S.W.2d 374 (1980). We will not reverse the decision of the trial court unless there is a clear abuse of discretion; no such abuse has been shown here.

Appellant argues that the trial court erred in not granting a mistrial when, during direct examination, a defense witness referred to the fact that appellant had been paroled:

[Mr. Jamison, Attorney for Appellant]

Q You did counsel Mr. Hayes personally on a few occasions.

[Witness Bessie Lancelin]

A Yes.

Q Just what does that entail — the counseling session?

A Well, it would depend. In his particular situation he had been referred to us by his probation officer at that

time because he had been recently paroled. So it would vary with different people. And we had to set up a plan that was individualized that would meet his particular needs. You want to know what I said to him at the time that he came in?

After the witness had been cross-examined, the following exchange took place in chambers:

Mr. Jamison: Your Honor, I do have one more motion to make. During the testimony of Bessie Lancelin, and without my — I guess I did solicit the answer. Ms. Lancelin did refer to the fact that Mr. Hayes was on parole, and I did not do this in order to try to create some technicality for a new trial, but I do feel that that answer was — or the referral to Mr. Hayes' being on parole was prejudicial, and for that reason I would move for a mistrial.

The Court: Of course, the Court heard the testimony and I'm willing to instruct the jury to totally disregard it and not consider it for any purpose whatsoever or any other reasonable request that you could make. Since the answer was elicited — Not directly, but it was a result of direct examination by a defense witness, to some extent, at least, it was invited. The witness probably should have been cautioned by counsel before testifying not to mention that fact. It of course came as a surprise to me. But at this time I'd be glad to instruct the jury or take whatever action necessary short of a mistrial. I would deny the motion for a mistrial.

Mr. Jamison: Your Honor, I do feel that regarding any more reference to that statement by her, I don't think it should be brought to the jury's attention. I do think that it would just invite more attention to that particular statement.

The Court: Okay.

The trial court also instructed the prosecutor to refrain from making any references to the fact that appellant was on parole.

The trial court is granted a wide latitude of discretion in granting or denying a mistrial, and its decision will not be reversed except for abuse of discretion or manifest prejudice. *Cobb* v. *State*, 265 Ark. 527, 579 S.W.2d 612 (1979). Here, we cannot say the trial court abused its discretion in denying the motion for mistrial where the undesired response was elicited by appellant's attorney.

We find no evidence that the jury's verdict was based on either passion or prejudice, nor do we find the imposition of the death penalty in this case to be arbitrary, capricious, or wanton. In our comparative review of death sentences, we find the sentence not excessive.

In the sentencing phase of the trial the jury received as evidence of aggravating circumstances three prior felony convictions, one for second degree murder and two for shooting with intent to kill or wound. This evidence supported the jury's finding that appellant had previously committed another felony, an element of which was the use or threat of violence to another person. At appellant's insistence his sister was not allowed to testify regarding mitigating circumstances; the jury found none existed. The jury's finding that the aggravating circumstances outweigh beyond a reasonable doubt any mitigating circumstances is supported by the evidence.

We have examined all objections pursuant to Rule 11 (f), Rules of the Supreme Court, Ark. Stat. Ann., Vol. 3A (Repl. 1977) and find no error. *See Earl* v. *State*, 272 Ark. 5, 611 S.W. 2d 98 (1981).

Affirmed.