Leslie Edwards NICHOLS *v.* STATE of Arkansas

CR 83-16                                      655 S.W.2d 450

Supreme Court of Arkansas
Opinion delivered July 18, 1983

*Charles L. Carpenter, Jr.,* for appellant.

*Steve Clark,* Atty. Gen., by: *Matthew Wood Fleming,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. This appeal is from convictions of murder in the first degree and aggravated robbery for which the jury fixed appellant's punishment at 37 years and 16 years imprisonment, respectively. Two of the state's principal witnesses refused to testify at the end of the state's case. The appellant moved for a directed verdict, which the court denied. The appellant then declined to offer any evidence. Appellant argues, through court appointed counsel, that the trial court erred in denying his motion inasmuch as the evidence is insufficient to support a conviction on either charge. The theory of the state's case is that, although appellant did not kill the victim, he was an accomplice, and the jury was so instructed. AMCI 401. Viewing the evidence most favorable to the appellee, as we must do on appeal, we must agree that the motion for a directed verdict should have been granted.

The deceased, Shelia Bishop, a/k/a Shelia Ann Ward, was a federally protected witness. She was moved to Little Rock from Maryland by the federal authorities. In June 1980 approximately two weeks before the date she was last seen alive, she and her eight year old son moved in with Larry Lewis, her boyfriend, and Larry's mother. On June 13 or on Friday morning of the date the victim disappeared, Larry Lewis came in from attending nightclubs at approximately 4 a.m. Present when he arrived were Billy Gene Stephenson (Larry's brother), Charles Moorman and appellant. It appears that, because of her status as a federally protected witness, a decision was made by Larry and Billy Gene, after a private discussion, to move the victim to a motel. The four men and the victim got into a 1968 station wagon to go to a motel. Moorman drove the car with the appellant in the front seat. Larry, Shelia and Billy Gene occupied the rear seat. After they had driven about a half mile, Larry got out of the car at Billy Gene's request. Billy Gene stated he would take Shelia to a motel and Larry trusted his brother to do so. Shelia was never seen again alive by Larry. Her decomposed body was found at a gravel pit on July 19, 1980. She had been shot in the back of the head with a large caliber weapon. The state medical examiner testified that she had been killed about five weeks earlier.

A cab driver, Thomas Higgins, testified that he received a call on Friday morning, June 13, 1980, at approximately 4:45 a.m. No one came out of the house where he was directed to pick up his passenger, but an unmasked black man got in the front seat on the passenger side. When the door was opened, this individual was momentarily visible from the dome light until the door was closed. He also observed him when they passed through two street lights. The passenger pulled a large caliber pistol and took possession of Higgins' cab and made him get in the cab trunk. A few minutes later, the driver stopped the cab and Higgins heard two men and a woman get in it. After a few more minutes of driving, the cab was stopped again and the three men and the woman got out of it. They were arguing inaudibly, except he heard the woman say, "I'm going home anyway." Their voices faded as they walked away. One person later returned to the cab and drove it to a location in Little Rock before abandoning it. Higgins had heard another vehicle drive away from the point where the three men and the woman had gotten out of his cab. He said this vehicle sounded like "an old rattletrap." Later, Higgins picked the appellant's picture out of a stack or spread of six photographs as the person he thought abducted him and took his cab. However, he could not be certain about the identity. At trial he testified that the appellant appeared to be the culprit. "That's all I can say. It looks like him."

On appellate review of the sufficiency of the evidence, we seek to determine whether the verdict is supported by substantial evidence. We reiterated in *Jones* v. *State*, 269 Ark. 119, 598 S.W.2d 748 (1980), that substantial evidence, whether direct or circumstantial, must be of "sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. It must force or induce the mind to pass beyond suspicion or conjecture . . . . [T]he test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences." Evidence is not substantial whenever the factfinders are left "only to speculation and conjecture in choosing between two equally reasonable conclusions, and merely gives rise to a suspicion." *Surridge* v. *State*,

279 Ark. 183, 650 S.W.2d 561 (1983). A directed verdict should be granted where there is no evidence from which the jury could have found, without resorting to surmise and conjecture, the guilt of the defendant. *Fortner & Holcombe v. State,* 258 Ark. 591, 528 S.W.2d 378 (1975). In *Ravellette v. State,* 264 Ark. 344, 571 S.W.2d 433 (1978), we said: "Where inferences are relied upon, they should point to guilt so clearly that any other conclusion would be inconsistent. This is so regardless of how suspicious the circumstances are."

Here, there is no evidence upon which the jury could base its convictions except upon surmise and conjecture. When the evidence is found insubstantial on appeal, the double jeopardy clause of our federal constitution requires a dismissal of the action. *Roleson v. State,* 277 Ark. 148, 614 S.W.2d 656 (1981); *Polland v. State,* 264 Ark. 753, 574 S.W.2d 656 (1978); *Burks v. U.S.,* 437 U.S. 1 (1978); and *Greene v. Massey,* 437 U.S. 19 (1978). Consequently, it becomes unnecessary to discuss other contentions appellant urges for reversal.

Reversed and dismissed.

ADKISSON, C.J., dissents.