T. J. HAYES *v.* STATE of Arkansas

CR 82-113                                   280 S.W.2d 648

Supreme Court of Arkansas
Opinion delivered November 2, 1983

509-A

*Jeff Rosenzweig,* for petitioner.

*Steve Clark,* Atty. Gen., by: *Alice Ann Burns,* Deputy Atty. Gen., for respondent.

PER CURIAM. Petitioner T. J. Hayes was convicted by a jury of the capital felony murder of Catherine Carter and J. W. Lunsford. He was sentenced to death. We reversed and remanded the case for a new trial. *Hayes v. State,* 274 Ark. 440, 625 S.W.2d 498 (1981). On retrial, petitioner was found guilty and again sentenced to death. The conviction and sentence were affirmed. *Hayes v. State,* 278 Ark. 211, 645 S.W.2d 662 (1983). Petitioner then sought a writ of certiorari before the United States Supreme Court. After his petition was denied on October 3, 1983, petitioner filed the petition for stay of execution and petition to proceed pursuant to A.R.Cr.P. Rule 37 which are now before us. Finding no grounds for postconviction relief, both petitions are denied.

Catherine Carter's parents testified at trial that Catherine and petitioner, both of whom were black, got into a cab

driven by a white driver at about 2:30 p.m. on July 16, 1979. At approximately that time a security guard at the Arkansas Department of Correction saw petitioner and a black female pass by on Princeton Pike in a Yellow Cab driven by a white male. According to petitioner's statement to police he told the cab driver, J. W. Lunsford, to stop at an unoccupied house on Princeton Pike. When the three got out of the cab, petitioner, who was armed with a .38 caliber pistol, shot Lunsford twice, killing him. Petitioner and Catherine entered the house where petitioner shot her twice. As petitioner was driving the cab to a wooded area to hide it, he was seen by the same security officer who had seen the cab earlier. Later that day, petitioner walked into the Jefferson County Sheriff's Office and announced that he had just killed his girlfriend. He then led officers to the two bodies and showed them where the cab was hidden. After being advised of his rights, he gave a statement describing the two murders.

In his petition for postconviction relief, petitioner first argues that he was denied a speedy trial. This issue was raised in the first appeal and found to be without merit. We declined to consider the question again on the second appeal and will not entertain it now in a petition for postconviction relief. *Houser* v. *United States,* 508 F.2d 509 (8th Cir. 1974); *Neal* v. *State,* 270 Ark. 442, 605 S.W.2d 421 (1980). Petitioner contends that the issue is not barred from reconsideration, however, because he is couching it in terms of ineffective assistance of counsel; that is, counsel should have raised the issue as a violation of his rights under another rule of procedure, A.R.Cr.P. Rule 28.1 (b). The allegation is essentially conclusory. Petitioner merely states that Rule 28.1 (b) in effect at the time of his first trial was violated. He asks for a hearing on precisely when petitioner was committed to prison after his parole was revoked on another charge and precisely what were the excludable periods between arrest and the first trial. He does not give any factual support for his claim that a hearing would demonstrate the denial of a speedy trial. Rule 37 is not available to the petitioner who wishes to have a hearing in the hopes of finding some ground for relief.

Petitioner next alleges that he was denied due process of law and effective assistance of counsel by counsel's failure to conduct a meaningful *voir dire* of the jury panel and counsel's failure to make an adequate appellate record of the *voir dire*. Petitioner specifically cites counsel's failure (1) to request a sequestered *voir dire*; (2) to ask death penalty related questions of the last five jurors seated; (3) to make an adequate record in opposition to the death qualification of the jury; (4) to object to the excusal for cause of veniremen Burns, Faulk, Gaither and T. Jones under *Witherspoon*; (5) to object to the veniremen being called in alphabetical order rather than by random selection; (6) to make more than one defense challenge for cause; (7) to conduct meaningful questions about attitudes toward the death penalty and diminished capacity; (8) to ask for a mistrial or admonition after venireman Greenhouse mentioned that he had attended petitioner's first trial; and (9) to seek answers during *voir dire* on which to develop an intelligent strategy of challenges. Petitioner states that if an evidentiary hearing is held, he will present expert testimony from attorneys to show that the *voir dire* was inadequate for a capital case.

Petitioner's long list of counsel's shortcomings fails to demonstrate the need for an evidentiary hearing because he does not show that any juror was unqualified to serve. Jurors are presumed to be unbiased and qualified. *Urquhart* v. *State,* 275 Ark. 486, 631 S.W.2d 304 (1982). Petitioner's bare allegation that he was prejudiced by counsel's conduct during *voir dire* which is unsupported by any showing of actual prejudice does not establish ineffective assistance of counsel. See *Hill* v. *State,* 278 Ark. 194, 644 S.W.2d 282 (1983); *Smith* v. *State,* 264 Ark. 329, 571 S.W.2d 591 (1978). We also note that a death qualified jury is constitutional. *Rector* v. *State,* 280 Ark. 385, 659 S.W.2d 168 (1983).

The prosecutor made references in his opening statement to the victims' inability to be witnesses at the trial and their inability to enjoy life. He also said the jury would have to be the victims' voice at the trial. Petitioner asserts that these remarks were prejudicial and a denial of due process. He further contends that counsel should have requested an admonition from the court.

When an issue is not raised at trial, as the issue of the propriety of the state's opening statement was not, the issue cannot be raised under Rule 37 unless the question is so fundamental as to render the judgment void and open to collateral attack. *Neal* v. *State, supra.* Even questions of constitutional dimension are waived if not raised in accordance with the controlling rules of procedure. *Collins* v. *State,* 271 Ark. 825, 611 S.W.2d 182 (1981). We do not find that the prosecutor's remarks render the judgment here void. We also cannot say that counsel was remiss in not objecting. There is a presumption of effective assistance of counsel. *Hill, supra.* To overcome that presumption, a petitioner must show by clear and convincing evidence that some prejudice resulted from counsel's representation and that the prejudice was such that he did not receive a fair trial. *Blackmon* v. *State,* 274 Ark. 202, 623 S.W.2d 184 (1981). Petitioner has not shown prejudice and the denial of a fair trial by counsel's failure to request an admonition.

According to petitioner his attorney called no witnesses in the penalty phase of the trial even though the record contains the report of a doctor which allegedly contained evidence in support of a mitigating circumstance. The failure to call witnesses in the penalty phase is not in itself an indication of ineffective assistance of counsel. *Collins, supra.* Counsel must use his own best judgment to determine which witnesses, if any, will be beneficial to his client. *Hill, supra.* (The record indicates that petitioner himself asked that his sister not testify.) Petitioner does not say to what the doctor would have testified had he been called beyond the conclusory allegation that the doctor's report would have supported the mitigating circumstance of diminished capacity. An allegation with no factual support is not grounds to find that counsel should have called a particular witness. *Hill, supra.*

Petitioner anticipates that the state would argue that he waived his right to present mitigating evidence. He contends that his mental condition was such that he could not competently waive the issue. If this is an attempt to raise the question of petitioner's mental state at the time of trial, it cannot succeed because Rule 37 was not intended to provide

a method for raising questions which are properly considered at trial and on appeal. *Swindler* v. *State*, 272 Ark. 340, 716 S.W.2d 1 (1981).

Petitioner also complains that during the penalty phase the state mentioned that his prior conviction for second degree murder had been reduced from a charge of first degree murder. He alleges that counsel should have objected and asked for an admonition or a mistrial. Although petitioner alleges prejudice, he has not established it. Counsel may well have chosen to remain silent to avoid drawing the jury's attention to the remark.

The state referred to the victim Catherine Carter in its closing argument as a loving woman who helped support her parents and who left a teenage son. Petitioner contends that her character was not in issue and that the remark should have elicited an objection from counsel. The victim's mother had already characterized her daughter as a church member who helped support her parents. The mother also testified that the victim had a son. Defense counsel objected to the testimony as irrelevant and the objection was sustained. Some of this same information was reiterated in the state's closing argument but there is no basis to conclude that petitioner was denied a fair trial by counsel's failure to object to it at that point. The jury had already heard about the victim's character. As a matter of trial strategy counsel may have decided to allow the information to be heard again rather than object and appear reluctant for the jury to know about the victim's background. Another attorney may have reacted differently, but in any event, petitioner has not shown that counsel's conduct prejudiced him or amounted to any more than a tactical decision. Matters of trial strategy are often open to debate and do not provide grounds for postconviction relief. *Leasure* v. *State*, 254 Ark. 961, 497 S.W.2d 1 (1973).

Petitioner gives three page numbers from the record and alleges that there are examples of violations of the prohibition against "Golden Rule arguments" on those pages. Page numbers where examples may be found are not sufficient, however, to demonstrate prejudice. Petitioner also alleges

that the prosecutor waved his finger in his face during closing argument to taunt him and inflame the jury. There was an objection to this but no ruling.

The jury in this case was instructed that closing arguments are not evidence. Experienced counsel in this case, or any case, could disagree as to the influence a particular closing argument had on the jury's verdict. Before a petitioner can prevail on an allegation that counsel was wrong in not objecting during closing argument, he must establish that he was denied a fair trial by the failure to object. Mere errors, omissions or mistakes, improvident strategy or bad tactics will not suffice to require an evidentiary hearing. *Leasure, supra.* At most, petitioner has shown mere error or bad tactics on the part of counsel.

Petitioner waived the defense of insanity. He now asserts that counsel was ineffective in not requesting a jury instruction on diminished capacity, intoxication or "other such problems." Although a specific instruction was not given on intoxication or diminished capacity, petitioner's allegation that one was needed is too vague to warrant a hearing. Petitioner declared to the court that he was pleading "just plain not guilty," not "not guilty by insanity or nothing like that." The jury was instructed on the intent necessary to find petitioner guilty of capital murder and the lesser included offenses of murder in the first and second degrees and manslaughter. The instruction on second degree murder covered homicide committed under extreme emotional disturbance, thus affording the jury an opportunity to consider the possibility that petitioner was emotionally disturbed. The jury's verdict indicates that it found no such disturbance; but even if no instructions had been given on the lesser included offenses, petitioner has offered no good reason to suggest that counsel was incompetent by virtue of his not requesting a separate instruction.

While conceding that the jury was instructed on the lesser included offenses to capital murder, petitioner argues that the instructions given were not meaningful to the jury. The allegation is conclusory and not deserving of a hearing. *Smith, supra.*

The jury found one aggravating circumstance. Petitioner alleges that Ark. Stat. Ann. § 41-1302 (Repl. 1977) requires more than one aggravating circumstance because the statute refers to aggravating circumstances in the plural. We find no merit to the argument. Ark. Stat. Ann. § 1-201 (Repl. 1977) provides:

> PLURAL WORDS. — Whenever, in any statute, words importing the plural number are used in describing or referring to any matter, parties or persons, any single matter, party or person shall be deemed to be included, although distributive words may not be used. [Rev. Stat., ch. 129, § 20; C. & M. Dig. § 9726; Pope's Dig., § 13252.]

Ark. Stat. Ann. § 41-1302, therefore, requires only that the jury unanimously find at least one of the aggravating circumstances set out in § 41-1303 to exist before it can impose the death penalty.

Petitioner asserts that the imposition of the death penalty in his case is not in proportion to the crime committed when compared to other capital defendants. On appeal, this Court found no evidence that the jury's verdict was based on passion or prejudice. We further found that the imposition of the death penalty was not arbitrary, capricious or wanton. In comparing petitioner's case to other cases in which the death penalty was imposed, we did not find the sentence excessive. The aggravating circumstances of petitioner's prior felony conviction outweighed beyond a reasonable doubt any mitigating circumstances. There is no cause to deviate from those findings now.

Before trial began petitioner was offered the opportunity to enter into a plea bargain whereby he would plead guilty and accept a sentence of life imprisonment without parole. He declined the offer. He now alleges that it was a violation of his constitutional right to due process and constituted cruel and unusual punishment for the state to seek the death penalty after he elected to have a jury trial instead of pleading guilty. There is no right to plead guilty, and the fact that only a jury may impose the death penalty

does not invalidate Ark. Stat. Ann. §§ 41-1301 — 1304 (Repl. 1977), which set forth the procedures governing jury trials for persons charged with capital murder. *Ruiz & Denton* v. *State*, 275 Ark. 410, 630 S.W.2d 44 (1982), *cert. denied,* ___ U.S. ___

Petitioner concedes that this Court has already ruled on certain issues which cannot be raised again under Rule 37. To assure exhaustion of state remedies, however, he alleges that his statement was not admissible; the death penalty is cruel and unusual punishment; and he was insane at the time of trial and remains insane today. We agree that these issues are not properly raised under our postconviction rule.

Finally, petitioner asks this Court to find that the cumulative effect of counsel's errors and omissions rendered his representation ineffective. There are no perfect trials. Due process demands only that the accused receive a fair trial. *Roleson* v. *State*, 277 Ark. 148, 640 S.W.2d 113 (1982). Petitioner has alleged imperfections but he has not established prejudice from the representation of counsel such that his trial was unfair. Accordingly, he has not met the burden of proving ineffective assistance of counsel.

Petitions denied.

DUDLEY and PURTLE, JJ., dissent.

ROBERT H. DUDLEY, Justice, dissenting. The petitioner has been sentenced to death. He pleads that he received the sentence of death, rather than life imprisonment without parole, solely because he did not receive the effective assistance of counsel guaranteed by the Sixth Amendment of the Constitution of the United States.

Death as a penalty is qualitatively different from all other punishments. It is to be imposed only after a structured exercise of discretion, which can be thwarted by incompetent representation. The petitioner's allegations of ineffective representation, whether or not conclusory, are sufficiently serious to raise questions about a failure to present evidence

which, in turn, would undermine the predicate for the structured discussion. Those questions should be rightfully answered before the petitioner is executed. I would grant the evidentiary hearing and stay the execution.

I am authorized to say that PURTLE, J., joins in this dissent.