James Rupert BYLER *v*. STATE of Arkansas

CR 74-68                                          513 S.W. 2d 801

Opinion delivered September 23, 1974

*Robert A. Newcomb*, for Dept. of Correction, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *O. H. Hargraves*, Dep. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. This is a Rule 1 petition by which the appellant Byler seeks to withdraw his plea of guilty to a charge of second-degree murder, on the grounds that he did not validly waive the assistance of counsel and did not intelligently and voluntarily enter the plea of guilty. The Honorable John L. Anderson, circuit judge, accepted the plea after a brief hearing on April 4, 1973. The Honorable Elmo Taylor, circuit judge, denied Byler's Rule 1 petition after a more extensive hearing on February 2, 1974. This appeal is from the latter order.

We defer for the moment a statement of the facts now before us, because this case can best be understood in the light of fairly recent developments in this area of the criminal law.

A convenient starting point is Rule 11 of the Federal Rules of Criminal Procedure, governing federal district courts. That Rule, as revised in 1966, reads:

> A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea. [Federal Rules of Criminal Procedure, Rule 11.]

In *McCarthy* v. *United States,* 394 U.S. 459 (1969), the district court failed to observe the Rule's directive that the judge personally inquire whether the defendant understands the nature of the charge against him and is aware of the consequences of his plea. The Supreme Court held that the omis-

sion entitled the defendant to an opportunity to plead anew. A month later the court refused to make the *McCarthy* rule retroactive. *Halliday* v. *United States,* 394 U.S. 831 (1969).

Another month later, in *Boykin* v. *Alabama,* 395 U.S. 238 (1969), two dissenting judges asserted that the *Boykin* majority had in effect made Federal Rule 11 binding upon the States as a matter of constitutional law. Although we do not construe the *Boykin* majority opinion to be that far-reaching, the court unquestionably held that State trial judges must determine whether pleas of guilty are intelligently and voluntarily made and, further, that such a determination cannot be presumed from a silent record.

The clearest and most detailed discussion of recommended procedures is to be found in the American Bar Association's "Standards Relating to Pleas of Guilty" (1968). In quoting those sections of the Standards that are especially applicable to the case at bar we are not to be understood as making them inflexibly binding, to the letter, upon the trial courts of this State, either retrospectively or prospectively. The draftsmen of the Standards say themselves: "The responsibility of the judge varies, depending upon such circumstances as the complexity and comprehensibility of the indictment and the defendant's intelligence, education, age, and experience." Commentary, Section 1.4(a). Nevertheless, we must observe that compliance with the Standards will go far toward achieving the twofold purpose of (1) assuring justice both to the accused and to the public and (2) minimizing the dreary necessity of having to reconsider in postconviction proceedings points that should have been set at rest when the plea of guilty was accepted.

We quote those parts of Section 1 of the Standards that are particularly pertinent to this case:

1.4 Defendant to be advised by court.

The court should not accept a plea of guilty or nolo contendere from a defendant without first addressing the defendant personally and

(a) determining that he understands the nature of the charge;

(b) informing him that by his plea of guilty or nolo contendere he waives his right to trial by jury; and

(c) informing him:

(i) of the maximum possible sentence on the charge, including that possible from consecutive sentences;

(ii) of the mandatory minimum sentence, if any, on the charge; and

(iii) when the offense charged is one for which a different or additional punishment is authorized by reason of the fact that the defendant has previously been convicted of an offense, that this fact may be established after his plea in the present action if he has been previously convicted, thereby subjecting him to such different or additional punishment.

1.5 Determining voluntariness of plea.

The court should not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary. By inquiry of the prosecuting attorney and defense counsel, the court should determine whether the tendered plea is the result of prior plea discussions and a plea agreement, and, if it is, what agreement has been reached. If the prosecuting attorney has agreed to seek charge or sentence concessions which must be approved by the court, the court must advise the defendant personally that the recommendations of the prosecuting attorney are not binding on the court. The court should then address the defendant personally and determine whether any other promises or any force or threats were used to obtain the plea.

1.6 Determing accuracy of plea.

Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as may satisfy it that there is a factual basis for the plea.

1.7 Record of proceedings.

A verbatim record of the proceedings at which the defendant enters a plea of guilty or nolo contendere should be made and preserved. The record should include (i) the court's advice to the defendant (as required in section 1.4), (ii) the inquiry into the voluntariness of the plea (as required in section 1.5), and (iii) the inquiry

into the accuracy of the plea (as required in section 1.6).

We turn now to the facts in the case at hand. Byler, a middle-aged man, had only a first-grade education. He cannot read or write. Jimmy Zomant, the victim of the asserted homicide, died of a gunshot wound on March 31, 1973. On April 2 Byler was charged by information with second-degree murder. On April 4 Byler appeared before the court without counsel and pleaded guilty. The hearing, transcribed upon less than three typewritten pages, could hardly have taken more than five minutes. Before pleading guilty Byler was asked nine questions, all of which he answered either "Yes, sir," or "No, sir." There was no testimony.

Seven of the nine questions had to do with the appointment of an attorney for Byler and are not now directly pertinent. By his responses Byler acknowledged that he did not have an attorney, that he understood that the court would appoint one for him, that he did not want an attorney, and that he waived his right to have one.

The other two questions, the first being dual in form, were the only inquiries touching upon whether Byler's plea of guilty was intelligently and voluntarily made. Both questions were put by the prosecuting attorney, not by the court:

Mr. Raff: Mr. Byler, do you understand the elements of the charge against you? Do you understand what your defenses would be?

Mr. Byler: Yes, sir.

\* \* \* \* \*

Mr. Raff: You also understand, sir, that you are waiving your constitutional right to a trial by jury to determine the issues that are involved and the charges that have been brought against you? You understand that, too, don't you, sir?

Mr. Byler: Yes, sir.

Byler than pleaded guilty. The court, upon the prosecuting attorney's recommendation, sentenced Byler to imprisonment for ten years. No statement or explanation of the minimum or maximum penalty had been made.

It is apparent that the court's procedure in accepting Byler's plea of guilty did not meet the minimum requirements laid down in *Boykin* v. *Alabama, supra,* much less the more detailed safeguards contemplated by the quoted Standards. The key question is whether the deficiencies were supplied by the record made at the second hearing.

At that hearing Byler, testifying in his own behalf, asserted on direct examination that he could not read or write, that he had been knocked in the head shortly before the earlier hearing and didn't know what he was saying, that he had been arrested for a felony in 1946, that he did not know the lesser included offense(s) in the charge of second-degree murder, that he did not understand the law of self-defense, and that before entering the plea of guilty he had not had an opportunity to discuss the charge with an attorney.

On cross-examination Byler admitted that he was convicted of first-degree murder in 1946. (That conviction was reversed and the cause remanded for a new trial. *Byler* v. *State,* 210 Ark. 790, 197 S.W. 2d 748 [1946]. The present record is silent as to the further proceedings in that case.) Byler acknowledged that he had a lawyer in the earlier case and that he understood, in the cross-examiner's words, "what the elements of murder were, what you were accused of, and what that meant . . .?" Byler's answer: "Yes, sir."

The court then questioned Byler, who supplied a few details about the 1946 trial, such as the surnames of his lawyer and of the prosecuting attorney. The court then asked about the present charge of second-degree murder. Byler was evasive, saying that he had been knocked in the head "at the party when it happened" and that he had been drinking; but the fact remains that the record contains no admission by Byler, other than his plea of guilty, that he actually committed the crime with which he was charged. See section 1.6 of the quoted Standards.

At the close of the hearing Judge Taylor stated his findings that Byler, though illiterate, was not ignorant and was smarter than he pretended to be; that Byler knew what he was doing when he waived his right to an attorney; and that his statement about having been knocked in the head (which

was disputed by the jailor) was untrue. Those findings are amply supported by the proof.

The difficulty is that the trial court made no finding whatever upon the second point raised by Byler's Rule 1 petition and argued by his attorney at the hearing; that is, that Byler's plea of guilty was not made intelligently and voluntarily. The omission is readily understandable, for the record falls fatally short of meeting even the minimum showing required by the *Boykin* decision. Byler actually received no information at all at the first hearing. No one explained to him such essential but difficult legal matters as the definition of second-degree murder, the defenses to that charge, or its lesser included offenses. There is nothing even to hint that he was aware of the minimum or maximum penalty for the offense charged. No facts were brought out either with regard to the asserted homicide or with regard to Byler's part in it.

In this court the State argues simply that Byler, even though illiterate, must have known all those things, because he was found guilty of first-degree murder 27 years before the second homicide took place. Upon the meager record before us such a conclusion could be reached only by means of speculation and guesswork. No such finding was made by the trial court, undoubtedly because the State adduced no proof to support such a conclusion. In the light either of the *Boykin* ruling or of the cited Standards we can find no basis for denying the appellant's Rule 1 petition.

The judgment is reversed and the cause remanded with directions that the appellant be permitted to withdraw his guilty plea, with such further proceedings as may be appropriate.

HARRIS, C. J., and BYRD, J., dissent.