Clark SMITH *v.* STATE of Arkansas

CR 78-35                                    571 S.W. 2d 591

Opinion delivered October 9, 1978
(In Banc)

*Orville Clift,* by: *Kenneth S. Gould,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Jesse L. Kearney,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. This is a postconviction proceeding under Criminal Procedure Rule 37. On December 27, 1976, the appellant, Clark Smith, pleaded guilty to two charges of burglary and two charges of theft. He was sentenced to ten years' confinement with three years suspended.

In March, 1977, Smith filed a handwritten petition for Rule 37 relief. After an attorney had been appointed for him three amendments to the petition were filed. A full evidentiary hearing was held on December 22. The court denied the petition, but failed to make written findings of fact and conclusions of law as required by Rule 37.3 (c). This appeal was originally from that denial of relief, but as we shall see, that part of the appeal has been abandoned.

A week after the appeal had been filed in this court, the appellant obtained permission to file in the trial court a fourth amendment to his petition. That amendment was filed after we had reinvested the trial court with jurisdiction for that purpose. This appeal, as it has been developed by counsel, is now only from the trial judge's denial, without an evidentiary hearing, of the fourth amended petition.

The entire progress of the case is pertinent to a full understanding of the issue presented. After the informations had been filed, Bob Alsobrook was appointed as Smith's attorney and appeared with him to enter a plea of not guilty. After Phillip Shirron had been appointed in place of Alsobrook, the plea was changed to that of guilty. In accepting the plea of guilty the trial judge wholly failed to ascertain whether it was voluntary, as required by *Boykin* v. *Alabama,* 395 U.S. 238 (1969); *Byler* v. *State,* 257 Ark. 15, 513 S.W. 2d 801 (1974); and Criminal Procedure Rule 24. We quote the record of the pertinent proceedings when the plea was accepted:

> The Court: Mr. Shirron, do you feel like this Defendant is prepared to plead?

Mr. Shirron: Yes, I do, your Honor.

The Court: I feel sure that Mr. Shirron has explained to you all your constitutional rights and the effect of a plea. I ask you, Smith, how do you plead to the charge of burglary and theft, guilty or not guilty?

Defendant: Guilty.

The Court: Does the State have any recommendation it would like to make to the Court?

Mr. Scrimshire: Yes, Sir. The State recommends ten years in the penitentiary with three suspended.

The Court: It will be the judgment of this Court you be sentenced to a term of ten years in the penitentiary, and I will honor the State's recommendation and agree to suspend three years of that. He is yours, Mr. Sheriff.

Less than three months later Smith, as a prisoner, filed his first petition for postconviction relief. He alleged that his attorney had led him to believe that by pleading guilty he would receive a lesser sentence and that the court failed to tell him that it refused to go along with the original agreement until after he pleaded guilty. Donald M. Spears was then appointed as Smith's counsel. Spears's first amendment to the petition alleged that the plea of guilty was induced by the promise by members of the sheriff's department that Smith would not have to serve his sentence, but would be sent to a rehabilitation center instead. Spears's second amendment alleged that Alsobrook had been relieved at a critical stage of the proceedings without Smith's knowledge or consent, denying him his right to effective counsel. Spears's third amendment alleged that the sheriff's office had obtained statements from Smith by threat, coercion, and hope of reward, and that the statements should not be admissible against Smith.

At the evidentiary hearing Smith was represented by Spears. Several witnesses were called by the petitioner, including two members of the sheriff's department. Smith also testified. His testimony was almost entirely to the effect that

he signed two confessions because he thought he would be sent to a rehabilitation center. In response to a final leading question he said that he pleaded guilty because he thought he had to in order to go to the rehabilitation center. It may be noted that he did not deny his guilt, that he said nothing about his understanding of a plea bargain or even that there had been such a bargain, and that he did not say that he did not fully understand his rights when he pleaded guilty. After the hearing the court denied the petition, but made no findings of fact or conclusions of law.

Smith filed his own notice of appeal from the order, and a fourth attorney, Orville Clift, was appointed for the appeal. Mr. Clift associated with him a fifth attorney, Kenneth B. Gould, whose signature to pleadings identifies him as an associate professor of law and Director of Clinical Programs at the University of Arkansas law school at Little Rock.

Seven days after the record was filed in this court counsel asked permission to file a fourth amendment to Smith's petition. Since such an amendment should be filed in the trial court, we reinvested that court with jurisdiction. At that time, of course, we had no knowledge of the prior proceedings.

The amendment pointed out the trial court's failure, in accepting the plea, to comply with *Boykin, Byler,* and Rule 24. The pivotal assertion in the amendment is this sentence: "The failure of the court to comply with the constitutionally mandated requirements of a trial judge in accepting pleas of guilty resulted in Petitioner's plea being an involuntary plea of guilty and abridged Petitioner's rights under the United States Constitution and under the Rules of Criminal Procedure of the State of Arkansas." The pleading then went on to say that the failure of counsel to raise this question at the December 22 evidentiary hearing constituted a denial of effective assistance of counsel. When the trial court denied the amended petition, without a hearing, a second notice of appeal was filed, and in due course the case was briefed in this court.

We emphasize at the outset counsel's failure in their brief in chief to make any argument whatever that the trial court erred either in denying relief after the evidentiary hear-

ing or in failing to make written findings and conclusions. An issue not argued on appeal is waived. *Cowger* v. *Mathis*, 255 Ark. 511, 501 S.W. 2d 212 (1973). The court's failure to make findings is mentioned, merely in passing, in the reply brief, but that comes too late. *Ryall* v. *Waterworks Imp. Dist. No. 3*, 247 Ark. 739, 447 S.W. 2d 341 (1969).

There remains only the allegation that we have quoted, which states in effect that the court's failure to comply with "the constitutionally mandated requirements" *in itself* results in the plea of guilty being involuntary.

That position cannot be sustained. There is no constitutional requirement that the trial judge make the explanation required by *Boykin*. See *Brady* v. *United States*, 397 U.S. 742 (1970). As the Court of Appeals stated in *United States* v. *Pricepaul*, 540 F. 2d 417 (9th Cir. 1976):

> Subsequent federal court decisions have made clear, however, that a plea-taking record silent about *Boykin* rights does not require automatic reversal; the prior conviction may stand if it is proved at a postconviction evidentiary hearing that the plea was voluntary and intelligent.

To the same effect is this statement by the Eighth Circuit Court of Appeals in *Todd* v. *Lockhart*, 490 F. 2d 626 (1973):

> Since we believe that as a constitutional matter the question is whether the plea was voluntary and intelligent, we agree with a number of other courts which have held that a state may, in a state post-conviction hearing, . . . cure the otherwise defective plea-taking transcript.

(The opinion in *Todd* does not disclose what allegations in the federal habeas corpus petition led to the granting of a second evidentiary hearing.)

Thus the true substantive question is not whether the trial court complied with *Boykin, Byler,* and Rule 24, but whether the plea of guilty was in fact intelligently and voluntarily made. At the December 22 hearing the trial court con-

sidered that very question upon a petition, with amendments, asserting some five different issues of fact going to the validity of the plea. The court upheld the plea. The correctness of that decision is not questioned.

All we have left is a conclusion of law, that the court's failure to comply with Rule 24 resulted in the plea's being involuntary. During recent years we have repeatedly denied postconviction petitions because the allegations were merely conclusory. *Stone* v. *State,* 254 Ark. 566, 494 S.W. 2d 715 (1973); *Cooper* v. *State,* 249 Ark. 812, 461 S.W. 2d 933 (1971). Such cases are controlling here.

Indeed, this record discloses three separate examples that confirm the necessity for requiring allegations of fact, not conclusions of law. First, attorney Spears alleged several different reasons for postconviction relief, but he did not include the trial judge's failure to comply with Rule 24. We assume, in the absence of contrary allegations of fact, that he consulted with his client and concluded that no additional grounds for relief could be supported by his client's testimony under oath. Second, attorneys Clift and Gould elected not to ask that this cause be remanded to the trial court for findings and conclusions or to argue that the trial court's decision after the evidentiary hearing was wrong. Here we have the record before us and know, without any assumptions, that counsel's decisions were well taken and do not represent ineffective assistance of counsel on their part. Third, attorneys Clift and Gould chose to plead only a conclusion of law in their final amendment to the petition. Again we may fairly assume that this omission does not constitute ineffective assistance of counsel, because, just as with respect to attorney Spears, we assume that they consulted with their client and concluded that no additional grounds for relief could be supported by their client's testimony under oath.

It is time for this proceeding to come to an end. Smith has had the assistance of five lawyers, all apparently provided at public expense. He has had a complete opportunity to plead every fact that might be supported by proof, to testify in person, and to call witnesses in his behalf. We can find no reason for ordering still another hearing without the slightest

basis for supposing that any new fact not already in the record would be discovered.

Affirmed.

HICKMAN and HOWARD, JJ., dissent.

GEORGE HOWARD, JR., Justice, dissenting. I am compelled to dissent from the holding of the majority in affirming the trial court in denying a hearing on appellant's fourth amendment to his petition, which was filed pursuant to an order of this Court.

On November 28, 1977, in *McGee v. State*, 262 Ark. 473, 557 S.W. 2d 885, we said:

". . . Rule 24.5 (1976), which provides:

The Court shall not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary. The court shall determine whether the tendered plea is the result of a plea agreement. If it is, the court shall require that the agreement be stated.

Clearly, this rule is mandatory.

". . . Rule 25.3(c) provides that if a plea agreement exists in which the trial court has not concurred, then the court 'shall advise the defendant in open court at the time the agreement is stated that:

(1) the agreement is not binding on the court;

(ii) if the defendant pleads guilty or nolo contendere the disposition may be different from that contemplated by the agreement.

Without the trial court's advising the appellant as to these requirements upon his guilty pleas, there is no assurance that his guilty pleas were intelligently and voluntarily made. In these circumstances it might very well be that the accused pleaded guilty to the attempted

robbery charge under a misunderstanding of the law and his rights. . . . . "

On May 10, 1976, in *Cusick* v. *State,* 259 Ark. 720, 536 S.W. 2d 119, we also made the following observation:

"In *Byler,* we pointed out that the 'Standards Relating to Pleas of Guilty' (1968) promulgated by the American Bar Association cautioned that a court should not accept a plea of guilty without first addressing the defendant personally and, after determining that he understands the nature of the charge, informing him that his plea of guilty or nolo contendere was a waiver of his right to trial by jury and of the maximum possible sentence on the charge. We held in *Byler* that a simple affirmative answer in open court to inquiries as to whether the defendant understood the elements of the charge and his waiving jury trial by entering a plea of guilty was not sufficient to meet *Boykin* requirements, at least when no statement or explanation of the minimum or maximum penalty had been made.

". . . It is true that the certificate of the attorney appointed to represent the defendant contains a statement that appellant understood all of that 'paper' and the meaning and effect of his plea of nolo contendere and that defendant had been advised that the information correctly stated the charges and that the judge would find him guilty upon a plea of nolo contendere. The record discloses that the trial judge did state the nature of the charge and ascertained from the defendant that he understood. There is nothing whatever to indicate that appellant knew the range of possible punishment."

But today, the majority, in the face of the above pronouncements hold:

"There is no constitutional requirement that the trial judge make the explanation required in *Boykin.*"

In support of this pronouncement, the Court cites *United States* v. *Pricepaul,* 540 F. 2d 417 and *Todd* v. *Lockhart,* 490 F. 2d 626. However, a careful and open minded reading of these

cases readily leads one to the inescapable conclusion that the majority's position is, indeed, untenable. Moreover, not only is the majority's posture untenable, but opens the door to uncertainty, on the part of the bar and bench alike throughout the state as to the actual status of the rule of law involving the issues before us. This, indeed, is against the grain of the purpose and scope of the highest tribunal in the State whose prime responsibility is to clarify, make plain and give a degree of permanence or stability to the rule of law. Instability in the law not only culminates in confusion, but creates the likelihood of the deprivation of fundamental and basic rights. In *Boykin,* supra, the United States Supreme Court stated:

". . . In *Carnley* v. *Cochran,* 369 U.S. 506, 516, we dealt with a problem of waiver of the right to counsel, a Sixth Amendment right. We held: 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.'

"We think that the same standard must be applied to determining whether a guilty plea is voluntarily made. For, as we have said, a plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality. *The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards . . . .*

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. . . . Second, is the right to trial by jury. . . . Third, is the right to confront one's accusers. . . . We cannot presume a waiver of these three important federal rights from a silent record.

"What is at stake for an accused facing death or im-

prisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought . . . and forestalls the spin-off of collateral proceedings that seek to probe murky memories."

In *Pricepaul,* supra, relied upon by the majority, the Court stated:

". . . [W]e hold that when Pricepaul introduced the minute record of his prior California conviction which did not affirmatively disclose the rights protected by *Boykin* were voluntarily and intelligently waived and no other record was introduced, he made a showing sufficient to require an evidentiary hearing at which the government would have the burden to prove that the plea-taking was in accordance with *Boykin.*"

In *Lockhart,* supra, the Court said:

". . . [W]e hold that once a state prisoner has demonstrated that the plea taking was not conducted in accordance with *Boykin,* the state may, if it affirmatively proves in a post-conviction hearing that the plea was voluntary and intelligent, obviate the necessity of vacating the plea."

The record in this case reflects the following testimony offered by appellant during the hearing on appellant's initial post-conviction petition on December 22, 1977:

"Q. At the time you were placed in custody did anyone read you your rights?

A. No.

Q. How long were you in jail before you signed any statements?

A. Two weeks.

Q. Who talked to you during that period of time?

A. No one but Deputy Lloyd Smith and the high Sheriff.

Q. What did they say to you?

A. Well, ah Deputy Lloyd Smith mentioned something about the Hot Springs Rehabilitation Center. He said if I made a confession he would give me a recommendation in order to see that I obtained my requirements."

Even under the majority's interpretation of *Pricepaul,* supra, and *Lockhart,* supra, which I submit is limiting the scope of the rule announced in *Boykin,* supra, *McGee,* supra, and *Cusick,* supra, requires a reversal in this case in view of the fact the State, although having cross examined witnesses called by appellant, did not offer any direct testimony to prove that the plea of appellant's was in accordance with *Boykin* and was voluntarily and intelligently made in order to "obviate the necessity of vacating the plea." *United States v. Pricepaul,* supra, *Todd v. Lockhart,* supra.

Finally, the majority makes the following observation in its opinion:

". . . This appeal, as it has been developed by counsel, is now only from the trial judge's denial, without an evidentiary hearing, *of the fourth amended petition.* (Emphasis added)

. . .

"The amendment pointed out the trial court's failure, in accepting the plea, to comply with *Boykin, Byler,* and Rule 24. The pivotal assertion in the amendment is this sentence: 'The failure of the court to comply with the constitutionally mandated requirements of a trial judge in accepting pleas of guilty resulted in Petitioner's plea of being an involuntary plea of guilty and abridged Petitioner's rights under the United States Constitution and under the Rules of Criminal Procedure of the State of Arkansas.'"

I do not visualize appellant's fourth amended petition in such a restrictive nature, but on the contrary, it is broader and embraces all of the contentions that were alleged in appellant's initial petition, his second amendment as well as the third amendment. The heading of appellant's paragraph number 4 in his fourth amended petition is as follows:

"*4. Petitioner's original motion in this cause should be amended to include the following.*"

Following the above quoted heading, appellant specifically discusses *Boykin* and Rules 24.4, 24.5 and 24.6 of the Arkansas Rules of Criminal Procedure as having been disregarded and contravened by the trial court at the time the plea of the appellant was taken. I submit, therefore, that the posture taken by the majority in this regard embraces all of the ingredients and characteristics of a technicality without any substance or merit.

Moreover, it is well recognized that an amendment to a complaint that does not set forth a new cause of action, but is merely an expansion or amplification of the cause of action already stated, the amendment, as here, relates back and takes effect as of the date of the commencement of the original action. *Bain & Company* v. *Deal,* 251 Ark. 905, 475 S.W. 2d 708; *Little Rock Traction & Electric Co.* v. *Miller,* 80 Ark. 245, 96 S.W. 993; *Western Coal & Mining Co.* v. *Corkille,* 96 Ark. 387, 131 S.W. 963.

The pronouncement in *Pruitt* v. *Hutto,* 542 F. 2d 458 (8th Cir. 1976), is appropriate at this point, where the Court stated that a petitioner was not foreclosed from litigating the issue of an unconstitutional in-court identification in a second state post-conviction action, even though the issue was not raised in the initial post-conviction proceeding, where there was no adequate showing that the matter was either finally adjudicated or intelligently waived in the previous proceeding. However, the majority would foreclose appellant from having a hearing on his fourth amended petition under the pretext that the trial court conducted a full evidentiary hearing on December 22, 1977. But it must be remembered that the trial court made no findings of fact and conclusions of law as required by our Criminal Rule 37.3(c), consequent-

ly, it cannot be said that the matter was either finally adjudicated or the matter intelligently waived in the previous proceeding.

I would reverse this case because I think appellant's learned counsel are eminently correct in asserting that the trial court failed to meet its obligations under Arkansas Rule of Criminal Procedure 24.5 which adopts the rule in *Boykin*, supra.