Otis Darnell THOMAS, Plaintiff,

v.

A.L. LOCKHART, Director of Arkansas Department of Correction, Defendant.

No. PB–C–82–110.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

July 25, 1983.

Robert Wellenberger, Monticello, Ark., for plaintiff.

Steve Clark, Atty. Gen. of Ark. by William C. Mann, III, Asst. Atty. Gen., Little Rock, Ark., for defendant.

MEMORANDUM OPINION

GEORGE HOWARD, Jr., District Judge.

This is a petition for a writ of habeas corpus by a 23 year old black male who was sentenced, after entering a plea of guilty, to the Arkansas Department of Correction for a period of thirty years on December 6, 1979, on a charge of forcible rape involving a white female in Drew County, Arkansas. Petitioner was represented by court appointed counsel.

On May 12, 1980, following petitioner's confinement to the Arkansas Department of Correction, petitioner filed his motion for post-conviction relief under Arkansas' Post-Conviction Rule 37. Among other things, petitioner alleged that his plea of guilty was involuntary and was not freely and intelligently made; and that he had ineffective assistance of counsel during his two appearances before the state trial judge, the last of which resulted in the plea of guilty.

The trial court, after conducting an evidentiary hearing on petitioner's motion for post-conviction relief, made the following findings:

(1) The petitioner was charged with the offense of rape on or about November 27, 1979.

(2) On November 29, 1979, the court was advised that the petitioner desired to enter a plea and the court, after adjudicating the petitioner to be indigent, appointed Honorable James Barker, of Hamburg, Arkansas, as petitioner's attorney. The court then explained the charges and possible penalty to petitioner.

(3) Petitioner and his attorney then secluded themselves in a conference room and sometime later, after consultation with Honorable James Ross, Deputy Prosecuting Attorney, announced that petitioner desired to enter a plea.

(4) At this time, the court explained petitioner's rights to petitioner, including his right to jury trial with the attendant benefits of effective counsel. Petitioner assured the court at all points in the proceeding that he did not desire a jury trial, but when the court asked petitioner if he was guilty as charged, the petitioner replied, "Not Guilty". At this point, all proceedings were suspended and petitioner was remanded back to the Drew County Jail.

(5) On December 6, 1979, the court was again advised that petitioner desired to enter a plea of guilty. The court convened on December 6, 1979, at which time the petitioner, members of his family and his attorney held a lengthy conference and after which his attorney announced to the court that petitioner desired to plea. At this time petitioner, as a result of negotiations with the Prosecuting Attorney, was sentenced to thirty years in the Arkansas Department of Correction.

(6) On May 12, 1980, petitioner filed this petition for Rule 37 relief.

(7) On September 23, 1980, the court ordered petitioner examined by psychiatrist at Delta Counseling and Guidance Center. Upon the recommendation of Dr. Joe Hutchinson, petitioner was, on November 18, 1980, committed to the Arkansas State Hospital for further evaluation. On December 16, 1980, the examining physicians diagnosed petitioner as follows:

" 'Diagnosis': (1) alcoholic abuse; (2) antisocial personality disorder.

'It is the opinion of the examining psychiatrist that Otis Darnell Thomas was probably not suffering from mental disease or defect of such degree as to make him unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law at the time of the alleged offense'."

(8) The Court further finds that after his arrest on November 27, 1979, and after having been advised of his rights, petitioner admitted showing the victim a knife during or immediately before the rape. The court also finds that if the victim had given her consent to intercourse, no knife would have been necessary.

(9) The court further finds that the petitioner's plea of guilty was entered voluntarily, knowingly and understandingly and was done with the advice and assistance of adequate and effective counsel. The court finds that petitioner understood the charges filed against him and also knew that punishment for rape was from five years to fifty years to life. Petitioner also had the benefit of examining the state's entire investigative file and after reflecting on his position made the decision on his own to plead and take the state's offer of thirty years rather than go to trial.

(10) Although the record reflects that petitioner had been a patient at the State Hospital in 1978 and had attempted suicide, petitioner had the mental capacity to understand the proceedings being held against him and was capable of effectively assisting his attorney in the proceedings.

The state trial judge entered the following conclusions of law:

From the above, it is clear that the petitioner had a rational and factual understanding of the proceedings filed against him. Suicide attempts do not establish that an accused is incompetent to participate in his defense. *Deason v. State,* 263 Ark. 56 [562 S.W.2d 79]. It must appear from the record that the plea of guilty has a basis in fact and that appellant understood the nature of the charges filed against him.[1] *Byler v. State,* 257 Ark. 15 [513 S.W.2d 801]. Any alleged deficiencies in the December 6, 1979, plea was supplied by the record made on February 16, 1981. The testimony of James Barker establishes that petitioner understood the nature of the charges against him and that he faced from five years to fifty years to life and that the state had offered thirty years.

As to the factual basis, petitioner's statement sets out in detail his actions, including the brandishment of a knife, in accomplishing the rape.

Petitioner failed to prove that his court appointed attorney was ineffective. There is no proof that counsel failed to do anything required of him. Petitioner was required to prove that the "proceedings (were) a farce and mockery of justice, shocking the conscience of the court." *Haynie v. State,* 257 Ark. 542, 518 S.W.2d 492.

Petitioner testified that he had certain witnesses who could testify he was not at the scene of the rape at the time in question, but his attorney failed to properly evaluate this defense. Petitioner's statement admits he had sexual intercourse with the victim which invalidates this possible defense.

It is hereby, CONSIDERED, ORDERED and ADJUDGED that the Petition for Rule 37 Relief be and the same is hereby dismissed.

IT IS SO ORDERED, this the 28th day of April, 1981."

Petitioner appealed the trial court's holding to the Arkansas Supreme Court, which affirmed the lower court's ruling on September 27, 1982. *Thomas v. State,* 277 Ark. 74, 639 S.W.2d 353.

The Arkansas Supreme Court framed the issue before the Court as: "Whether the guilty plea was entered intelligently and voluntarily and with the advice of competent counsel."

The Supreme Court in discussing the issue to be resolved, observed that there is a presumption that counsel was competent, citing *Rightmire v. State,* 275 Ark. 24, 627 S.W.2d 10; and that in "view of this presumption, appellant's burden is a heavy one." The Arkansas Supreme Court went on further to state:

We will reverse the denial of post-conviction relief only if the findings of the lower court are clearly against a preponderance of the evidence ... thus, the question to be resolved is whether the

---

**1.** It is undisputed that the state trial judge did not determine that there was a basis for the plea prior to entry of judgment. *See,* Rule 24.6,

A.R.Cr.P. This determination was made during the post-conviction proceeding.

trial court's findings were clearly against a preponderance of the evidence.

After discussing the findings of the trial court, the Arkansas Supreme Court concluded:

We affirm the trial court's ruling that appellant did not meet his heavy burden and did not prove ineffective assistance of counsel.[2]

Section 2254(d)(8) of Title 28, U.S.C.A. provides:

In any proceeding instituted in a Federal Court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

. . . . .

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record.

**2.** The Arkansas Supreme Court in addressing the various issues raised by petitioner's Rule 37 proceeding, made the following observation:

When there is a collateral attack on a plea of guilty, rendered upon advice of counsel, the inquiry is not addressed to the merits of the claims of constitutional deprivation prior to the entry of the plea, but is focused upon the question whether the plea had been made intelligently and voluntarily upon advice of counsel. Such deprivations are pertinent only in evaluating the advice rendered by counsel ... if the appellant's plea of guilty

[1] Where, as here, petitioner alleges denial of due process because of ineffective assistance of counsel, a federal district court may not simply rely on the findings of the state tribunals, but has the duty to examine the record of the state court proceedings and make an independent determination whether there is factual and legal support for the state court findings. In *Hill v. Wyrick,* 570 F.2d 748 (8th Cir.1978), *cert. denied,* 436 U.S. 921, 98 S.Ct. 2272, 56 L.Ed.2d 764, the Court of Appeals made the following observation:

We have stated on several occasions that in a habeas corpus proceeding, a federal district court may not rely on the findings of fact of a state court unless the federal court has independently examined a transcript of the proceeding.[3]

Moreover, where, as here, effective assistance of counsel is an issue in a context presenting mixed questions of fact and law, a state court's findings constituting factual and legal questions are not afforded the deference envisioned by subsection (d) of § 2254. *See, Eldridge v. Atkins,* 665 F.2d 228 (8th Cir.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168.

However, after reviewing the complete record of the state court proceedings, including the opinion of the Arkansas Supreme Court, the Court finds that the factual finding of the state court that petitioner's plea of guilty was not the result of ineffective assistance of counsel is not substantiated by the record. Therefore, the Court makes the following findings based upon the complete record of the state court proceedings:

was entered voluntarily and not the result of ineffective assistance of counsel, any other possible defenses, except jurisdictional defects were waived by him. . . .

**3.** Thomas' petition was filed *pro se,* but the court appointed Robert Wellenberger, Esq., who represented Thomas in the state post-conviction proceedings, to participate in oral arguments scheduled by the Court, *sua sponte.* Accordingly, a liberal construction is afforded Thomas' petition.

458

Otis Darnell Thomas (Thomas), a black male twenty-two years of age who has completed seven years of schooling, was charged with the crime of forcible rape on November 29, 1979, at 4:30 p.m. by information filed in the Monticello, Drew County, Arkansas, Circuit Court.[4] Between 4:30 p.m. and 6:00 p.m., of the same day, the state trial judge, by telephonic communication, appointed James Barker, Esq.,[5] an attorney who resides at Hamburg, Ashley County, Arkansas, to represent the petitioner and directed Mr. Barker to report immediately to the Drew County Courthouse, a distance of thirty miles from Hamburg, Arkansas. The state trial judge immediately scheduled a hearing, which was subsequently characterized as an arraignment of petitioner, to receive petitioner's guilty plea based upon, obviously from the record, what the trial judge had perceived before hand by *ex parte* communication, but was not acquiesced in by petitioner.

The following exchange which took place during the scheduled hearing is illustrative:

THE COURT: Mr. Ross, you have filed an information as I understand it, in the Circuit Court here against Mr. Otis Darnell Thomas, is that right?

MR. ROSS:[6] Yes, Sir.

THE COURT: Now, Mr. Thomas, will you please stand? Mr. Thomas, I have appointed Mr. James Barker as your attorney to represent you in this hearing. Mr. Ross, have you all arrived at any solution to this matter?

MR. ROSS: Yes, sir. I think so.

THE COURT: Very well. Mr. Barker do you want to plead your client at the present time of just take a not guilty plea?

MR. BARKER: If is please the Court, may I just do it in my way?

THE COURT: *I don't know whether there is any use of formerly arraigning him. I'll have to ask you that. According to Mr. Ross, you all have agreed*—(Emphasis added)

At this point Mr. Barker went on to explain to the trial judge that he had conferred with petitioner in the presence of petitioner's mother and father and had discussed the nature of the charges and explained to him the applicable criminal statutes including the penalties involved. Mr. Barker also stated he reviewed with petitioner the investigative file of the prosecuting attorney.

THE COURT: And you have read and explained such charges against Mr. Thomas to him?

MR. BARKER: I have read and explained the charges to him. I have explained to him that if he chose to have a trial by jury that if the jury decided that he was not guilty that he would get up and walk away from this table and go home. And that if he was found guilty, that he could be sent to the penitentiary for not less than five years nor any longer than his life.

And we have discussed the statements that were made by the alleged victim. And we have discussed the statements that were made by him. And I, quite frankly, have offered him the choice of either a guilty plea or a not guilty plea.

THE COURT: You and the Prosecutor have come to a settlement in this matter, is that right?

MR. BARKER: The Prosecutor has told me and I have relayed to Mr. Thomas that in the event Mr. Thomas were to plead guilty that the Prosecutor for the State would recommend to the Court that Mr. Thomas be sentenced to thirty years.

THE COURT: With that said, we will proceed then. As I said before, this is Case number 79–107, which is styled Information in the Circuit Court of

4. Petitioner's bond was set at $50,000.00. The alleged rape occurred on November 27, 1979.

5. Mr. Barker is currently serving as Deputy Prosecuting Attorney for the Tenth Judicial Circuit of Arkansas.

6. Mr. Ross is the Deputy Prosecuting Attorney of Drew County, Arkansas, which is located in the Tenth Judicial Circuit.

Drew County, Arkansas. State of Arkansas, versus Otis Darnell Thomas. Are you—

MR. BARKER: If it please the Court, I will be inclined to think that under the circumstances that I couldn't really waive an arraignment. A formal arraignment probably should be had.

THE COURT: You waive formal arraignment?

MR. BARKER: No, sir, I do not.

THE COURT: All right. I'm going to arraign him.

The trial judge, among other things, read the information to the petitioner and further advised petitioner that he was entitled to a jury trial; that the state, in a formal trial, would have the burden of proof to establish his guilt. The trial judge stated further:

THE COURT: Are you sure you do not want a jury trial in this case?

MR. THOMAS: Uh—Yeah, I would like to have a jury trial.

THE COURT: You want a jury trial?

MR. THOMAS: Yeah.

THE COURT: All right. Very well, Now, then, Mr. Thomas, I have read this Information to you. Do you understand? I have read it. Do you recall me reading it to you?

MR. THOMAS: Yes, sir.

THE COURT: Are you guilty or not guilty of the crime alleged in the Information, and that is rape on the 27th day of November, 1979? Are you guilty or not guilty, sir?

MR. THOMAS: Not guilty.

THE COURT: Very well, what is the bond on Mr. Thomas?

MR. ROSS: Fifty thousand dollars.

THE COURT: Mr. Thomas, the bond is going to remain at fifty thousand dollars. Mr. Thomas, now, Mr. Barker has been appointed your attorney and will advise with you. Are there any questions, sir?

MR. THOMAS: No, sir.

.        .        .        .        .

THE COURT: Mr. Sheriff, remand him back to the jail. This hearing is concluded.

On December 6, 1979, at 6:45 p.m., the state trial judge conducted a second hearing for the purpose of receiving petitioner's plea of guilty although petitioner had entered a not guilty plea on November 29th and stated that he wanted a jury trial. The record is completely silent as to the reason for the change.[7] The court appointed attorney was not aware of the scheduled hearing or the contemplated change of plea until he received the telephonic instruction from the trial judge to report immediately to the Drew County Courthouse. The following relevant exchange took place during the scheduled hearing on December 6th at 6:45 p.m.:

THE COURT: This is in the Circuit Court of Drew County, Arkansas. The case is the State of Arkansas versus Otis Darnell Thomas, number 79–107.

Now, Mr. Thomas has already been arraigned, has he not?

MR. BARKER: Yes, sir.

THE COURT: He has plead not guilty. All right. Come up here, Mr. Thomas, please.[8]

---

**7.** During oral argument, Mr. Wellenberger stated, and the record supports him, that at the termination of the hearing on November 29, 1979, Mr. Barker, the court appointed counsel, returned to Hamburg, Arkansas, and did not confer or even see petitioner until immediately preceding the December 6th hearing. Moreover, the trial judge called Mr. Barker, by telephone, at approximately 3:30 p.m. on December 6th and instructed Mr. Barker to come to Monticello immediately since a hearing would be held to receive petitioner's plea of guilty. Mr. Wellenberger further argued that the court appointed attorney did not even have time to

confer with petitioner prior to the beginning of the 6:45 p.m. hearing on December 6th and thus, was not able to determine why petitioner had changed his plea.

**8.** On November 29th, sometime after 4:30 p.m., the trial judge arraigned petitioner at which time petitioner entered a not guilty plea, however, the trial judge proceeded to arraign plaintiff a second time where plaintiff further maintained his innocence. Neither court appointed counsel nor the trial court sought to determine the cause for the purported change of petitioner's plea.

Are you Otis Darnell Thomas?

MR. THOMAS: Yes, sir.

THE COURT: How old are you, Mr. Thomas?

MR. THOMAS: Twenty-two.

THE COURT: What grade did you finish in school?

MR. THOMAS: Seventh.

THE COURT: Where did you go to school?

MR. THOMAS: Dumas. Reed. I think it was Dumas Junior High, but I think we were calling it Reed at the time.

THE COURT: Over in Desha County?

MR. THOMAS: Yes, sir.

THE COURT: Do you understand that you are charged with rape in the Drew Circuit Court? Do you understand that, sir?

MR. THOMAS: Yes, sir.

THE COURT: Have you discussed this case in detail with your attorney, Mr. Barker?

MR. THOMAS: Yes, sir.

THE COURT: Are you satisfied with Mr. Barker as your attorney?

MR. THOMAS: Yes, sir.

THE COURT: Do you understand that the minimum penalty for the offense for which you are charged would be five years in the Arkansas penitentiary or Department of Correction and it ranges on up to fifty or to life? Do you understand that?

MR. THOMAS: Yes, sir.

THE COURT: Do you understand that the fine that might be imposed upon you might be anywhere from nothing up to fifteen thousand dollars?

MR. THOMAS: Yes, sir.

THE COURT: Do you understand that you have a right to jury trial if you want a jury trial?

MR. THOMAS: Yes, sir.

THE COURT: Do you understand that at a jury trial you would have a right to subpoena and have testify on your behalf any witnesses that you want to testify for you and your lawyer, Mr. Barker, would have a right to cross examine all the State's witnesses that appear against you? Do you understand that?

MR. THOMAS: Yes, sir.

THE COURT: Do you also understand that at a jury trial you are presumed to be innocent until proven guilty beyond a reasonable doubt? Do you understand that?

MR. THOMAS: Yes, sir.

THE COURT: Do you understand that the burden of proof is on the State of Arkansas to prove you guilty beyond a reasonable doubt and all twelve of the jurors must agree that you are guilty before you will suffer any punishment whatever?

MR. THOMAS: Yes, sir.

THE COURT: Are you sure, now, Mr. Thomas, that you do not want a jury trial in this case?

MR. THOMAS: Yes, sir.

THE COURT: Has anybody threatened you, mistreated you or promised you anything to get you to plead guilty or not guilty in this case?

MR. THOMAS: No, sir.

THE COURT: I understand that you, Mr. Barker, and Mr. Ross, the Deputy Prosecuting Attorney, have agreed upon a recommended sentence in this case. Do you know what that recommendation is going to be?

MR. THOMAS: No, sir.

THE COURT: I imagine you know but you have forgotton. Mr. Barker, will you talk to him, sir? What is the recommended sentence, Mr. Barker?

MR. BARKER: The last time we were in Court—

THE COURT: Tell him that.

MR. BARKER: —the Deputy Prosecuting Attorney suggested—we've already talked about this—suggested that his recommendation to the Court would be, upon a plea of guilty, that Mr. Thomas receive a sentence of thirty years. *And that this recommendation was based on two factors. One was precedent of an event that occurred in this Court ap-*

proximately a year before, a case that I am not familiar with.

And the other was Mr. Thomas, himself.

THE COURT: Now, Mr. Thomas, do you know what the recommendation is going to be?

MR. THOMAS: Yes, sir.

THE COURT: What is it?

MR. THOMAS: Thirty years.

THE COURT: Thirty years in the Arkansas Department of Correction. Is that the way you understand it?

MR. THOMAS: Yes, sir.

THE COURT: Are you guilty or not guilty of rape as charged in the Information filed against you, sir?

MR. THOMAS: Well, I'm not guilty, though, but I'm going to plead guilty to it.

THE COURT: No, sir. I can't accept that. You are either guilty or you are not guilty.

MR. THOMAS: Guilty.

THE COURT: Mr. Barker, do you concur in this plea? He said he was guilty.

MR. BARKER: Are you asking me do I believe in my own mind that he's guilty?

THE COURT: No, sir. Do you concur in this plea he just made?

MR. BARKER: I concur in it. Yes, sir.

THE COURT: What's the State's recommendation, Mr. Ross?

MR. ROSS: Thirty years, Your Honor. We recommend he be given credit for the time he's spent in jail here.

THE COURT: Mr. Thomas, its the Judgment and Sentence of this Court that you be remanded to the Sheriff of Drew County, Arkansas, and by him transported to the Department of Correction where you will serve a period of thirty years.

The Court is granting you credit for—

THE SHERIFF: It'll be eight days, Your Honor, currently served in our County Jail.

THE COURT: —eight days served in the Drew County Jail awaiting this hearing.

Are there any questions?

MR. THOMAS: Yeah. Which penitentiary will I be in?

THE COURT: I can't tell you that. I don't know. It will be up to the officials up there. The Sheriff, all he can do is take you up there and deliver you to the reception center. I understand that's correct.

THE SHERIFF: That's correct. We deliver him to the reception center and they place him in the facility that want him in.

It is apparent that the state trial judge's desire to terminate petitioner's case hastefully and pursuant "to a settlement" offer made by the state prosecutor on a plea of guilty not only deprived petitioner and his court appointed attorney of a reasonable opportunity to confer, but placed the trial judge in a role more akin to an advocate than a neutral arbitrator which a judge is required to assume. Given the circumstances here, the court appointed counsel could have moved for a continuance or, if he felt that the trial judge had pre-empted his role as counsel, counsel could have withdrawn from the case.

In addition, the record establishes the following facts relative to the court appointed counsel's representation of the petitioner:

1. Court appointed counsel learned of the basic facts pertaining to petitioner's case from the state prosecuting attorney, but never personally investigated the case.

2. Counsel was told by the state prosecutor that if petitioner plead guilty to the rape charge the state would recommend a sentence of thirty years; that the recommendation was based on a verdict rendered by a jury in a rape case approximately one or two years previously before the same trial judge, but appointed counsel never familiarized himself with the facts and circumstances of that case in order to determine whether the proposed

sentence in petitioner's case was justified under the circumstances.

3. Counsel never discussed any possible defenses petitioner might have had to the charge against him, nor explained to petitioner and his parents that petitioner enjoyed a presumption of innocence and that the state had the burden to prove petitioner's guilt beyond a reasonable doubt.[9]

4. Although counsel was advised that petitioner had been confined to the state mental hospital approximately five different times since petitioner's nineteenth birthday and that petitioner had written communication from the state hospital relating to petitioner's mental condition and further requested that petitioner be given a psychiatric examination, counsel took no steps to have petitioner's mental condition determined either at the time of the alleged act or at the time petitioner was incarcerated. Moreover, counsel told petitioner and his parents that the state hospital "wouldn't do anything but send [you] back" and that a mental examination would not be of any benefit to petitioner.[10]

5. Although petitioner persisted that he was not guilty of the charge and supplied court appointed counsel with the names of three individuals—James Smith, Louise Smith and Minnie Mae Smith—who knew the whereabouts of petitioner at the time the alleged rape occurred, counsel did not interview these persons. Moreover, petitioner advised counsel that he had never seen the victim until the day that he was taken into custody and that he never admitted to the police that he had sexual intercourse with the victim.

6. Counsel's despairing and hopeless view of a jury's acceptance of a black man's testimony as opposed to the testimony of a white woman was not only a deterrent to petitioner's effort to enter a not guilty plea, but foreclosed petitioner's parents' desire to secure retained counsel. In this regard, petitioner testified:

"A. Ah, he talked like he didn't want to take the case, and so I told him that it's all right and I would get somebody else to take the case. Then my stepfather said, 'Well, you ain't got no choice, then you go on and take the case.' So, I went on and let him handle the case."

7. Counsel's vague and rambling comments about his own subjective racial prejudice against blacks not only confused petitioner and his parents, but led them to conclude that a trial would be futile and a waste of time. In this regard, petitioner testified:

"A. Well, ah, the attorney that I had appointed, he said that, "ah, I didn't have a chance of proving, ah, proving that I'm innocent. He said that being as I'm a black and the girl was white, that they were going to take her word over my word and said I would be looking for anywhere from, said I would probably get fifty, or maybe life."

Petitioner's mother testified:

"A. Well, Mr. Barker said to us that, ah, he would ... he would have racial prejudice. He told me that how would he feel going in a courtroom defending a black man that raped a white woman.

---

9. During the second hearing conducted by the trial court, the state trial judge mentioned perfunctorily presumption of innocence and the duty of the state to prove petitioner's guilt beyond a reasonable doubt.

10. During the post-conviction hearing, Mr. Barker testified:

"Ah, I explained to him as I knew ... as completely as I knew, the defense of insanity and that was a choice of their's, whether he desired to do this, or not."

The state trial judge, after petitioner filed his post-conviction petition, ordered petitioner examined by a psychiatrist at the Delta Counseling Center who recommended that petitioner be committed to the state hospital for further evaluation.

The state hospital diagnosed petitioner's condition as: alcoholic abuse and antisocial personality disorder and concluded that petitioner "was probably not suffering from mental disease ... at the time of the alleged offense." Significantly, the report is silent as to petitioner's mental condition at the time he entered his plea of guilty.

He said that would put him in a spot, and he talked like he didn't want the case. He was ... he told me that personally that he was racially prejudice and he wouldn't feel right standing in a courthouse defending a black man which was accused of raping a white lady.

"Q. Well, what was your reply to that?

"A. Well, I said to him, I said, 'Well, my Bible tells me that whether it is no white man or no black man, whatever, you just supposed to defend your brother.' And, he said to me, he said, 'Sister, you're not in the church house, you're in the courthouse in Monticello'." [11]

8. Counsel never attempted to negotiate a plea bargain on petitioner's behalf, but accepted, without question, the prosecutor's offer of thirty years.

9. Counsel did not apprise the trial judge, the prosecutor, petitioner and his parents of circumstances in mitigation of the charge against petitioner—i.e., attempted suicide by petitioner, numerous confinements to the state mental hospital and the fact that petitioner had gone without his prescribed medication from the time of his arrest on November 27, 1979, to December 6, 1979, when petitioner appeared in court and entered the plea of guilty.

The right to effective assistance of counsel is the equivalent to the right to counsel. In other words, the concept "effective assistance of counsel" is a coordinate of "right to counsel" for both are of equal importance when considering the concept of right to counsel in the context of due process and a denial of effective assistance entitles a criminal defendant to relief. *See, Gideon v.*

*Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Swagger v. State,* 227 Ark. 45, 296 S.W.2d 204 (1956).

In *Swagger,* the Arkansas Supreme Court in vacating a judgment and sentence on a plea of guilty where defendant was not afforded counsel, but the trial judge had satisfied himself that defendant was guilty as charged before accepting the plea, the Arkansas Supreme Court made the following observation after concluding that defendant had been denied due process of law and, consequently, the conviction was void and without force and effect:

"... [T]he failure to appoint counsel for the petitioner ... *and to require that the petitioner consult with such counsel deprived the court of jurisdiction to render judgment, it follows that the judgment entered upon the plea of guilty was void.*"

It is plain from a reading of *Swagger* that the Arkansas Supreme Court has long recognized that appointment of counsel for a criminal defendant without affording concurrently the opportunity to defendant time "to consult" with counsel and counsel an opportunity to investigate the case and offer meaningful assistance is just as offensive to due process of law as the complete failure to appoint counsel in the appropriate proceeding.

■ In the instant case, the record discloses that appointed counsel failed to offer any assistance whatsoever, much less effective assistance. Indeed, trial counsel failed to render the skills and diligence of a reasonably competent attorney under similar circumstances existing in petitioner's case.

11. Mr. Barker, during the post-conviction hearing, testified, in response to an inquiry by the state:

"A. I recall his mother and I discussing generally prejudice. And, we discussed prejudice and we discussed Christianity, and I told her that, ah, that in situations like this that this was always a problem. I did not consciously feel prejudice, but because of my basic, ah, my background, and the same as her's, but sometimes our mannerisms ex-

press it when we don't feel it. Ah, and when we are not trying to be that way, an, and that's just involved in things."

On cross-examination, the court appointed counsel testified:

"Q. Did you ever make a statement to the court that you were incompetent to try this case?

. . . . .

"A. I don't think so.""

The right to counsel as mandated by the Sixth Amendment and made applicable to a state and its political subdivision under the Fourteenth Amendment, envisions something more than slight and perfunctory assistance. The assistance contemplated is one of substance and· which is effective. Unless the assistance is actual and substantial in aiding a criminal defendant in determining whether to plead guilty or not guilty, assistance in any other context becomes one in form only and the proceedings are reduced essentially to a "farce" and "mockery of justice." *United States v. Easter,* 539 F.2d 663 (8th Cir.1976); *McQueen v. Swenson,* 498 F.2d 207 (8th Cir.1974). *See also, Ellis v. United States,* 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958); *Mason v. Balcom,* 531 F.2d 717 (5th Cir.1976); *Walker v. Caldwell,* 476 F.2d 213 (5th Cir.1973).

In *Ellis v. United States, supra,* the Supreme Court stated:

"Appointed counsel is not merely an amicus, but representation 'in the role of an advocate is required'."

■ A guilty plea does not justify assistance in form as opposed to assistance in substance, otherwise, the right to assistance of counsel would be limited exclusively to the clearly innocent. In *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Supreme Court articulated clearly why effective assistance of counsel is essential where a criminal defendant enters a guilty plea:

"... [A] guilty plea is a grave and solemn act to be accepted only with care and discernment has long been recognized. Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment. He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so—hence the minimum requirement that his plea be the voluntary expression of his· own choice. But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge. *Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.* (Emphasis added)

■ The Court is convinced that petitioner at no time, during his two appearances before the state trial judge, possessed an understanding either of the law or the facts and circumstances applicable to his case. Consequently, his guilty plea was not knowingly, voluntarily and intelligently made. This conclusion is reached by evaluating the assistance of court appointed counsel on the entire record. In other words, petitioner was not afforded effective assistance of counsel as guaranteed by the Federal Constitution. Accordingly, the writ of habeas corpus will issue. The prejudice accruing to petitioner is, indeed, the deprivation of the opportunity to be knowledgeable of the relevant facts, circumstances and law pertaining to his case which precluded him from entering a plea to the charge pending against him knowingly, voluntarily and intelligently. Accordingly, petitioner's conviction, sentence and the judgment entered against him are vacated, set aside and held for naught. However, the State of Arkansas will have the option of trying petitioner within 120 days in which case petitioner will be given an opportunity to replead.