PAYNE *v.* STATE.

4789                                                   272 S. W. 2d 829

Opinion delivered November 29, 1954.

310

*Claude F. Cooper,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

WARD, J. Appellant, Barney Payne, and Artie Bell were charged in an information filed May 17, 1954, with the crime of grand larceny in that they did on February 5, 1954, unlawfully and feloniously take, steal and carry away $3,000.00, the property of Woodrow Kelly. There being a severance, Barney was tried on June 21, 1954, and was found guilty. His punishment was fixed by the court at nine years in the penitentiary.

The testimony, which we are at liberty to view in the light most favorable to the State, shows: The prosecuting witness, Woodrow Kelly, operated a grocery store north of Rector, Arkansas. In January, 1954, Kelly was told of a man who had a "money making" machine and was given a chance to buy some of the money at a reduced price but, at that time, he refused. Sometime in the early part of February of the same year appellant, representing himself as a Mr. Johnson, came to Kelly's grocery store and offered to "make" him some money at the rate of $3.00 for $1.00. Later appellant returned to Kelly's store, showed him a new $5.00 bill which he said he had "made" and left it with him. Kelly showed the $5.00 bill to Artie Bell, with whom he had previously talked about the matter. Bell stated that he could not distinguish the money from a genuine bill and said he would be willing to pay $6,000.00 for $18,000.00 of the "made" money. Later the three of them met at a tourist

cabin in Blytheville and Payne took a $1.00 bill and demonstrated how to "make" it into a $5.00 bill. Apparently Kelly and Bell were impressed because they agreed to purchase some of Payne's money. Pursuant to agreement they all met at a tourist cabin in Paragould within a day or two after Kelly had withdrawn $3,000.00 from the Bank of Kennett, Missouri. After meeting in the tourist cabin which Bell had rented, Kelly says that he gave appellant his $3,000.00 and that Bell handed the appellant a paper sack which was supposed to contain $4,000.00 of Bell's money. Shortly appellant and Bell left the cabin, telling Kelly that they would be gone only a few minutes. In about five minutes Bell returned to the cabin and stated that appellant had gone to the drug store but would be back shortly. When appellant failed to return, Kelly became alarmed and reported the loss of his money to the police.

On March 23, 1954, appellant was given a preliminary hearing in the Municipal Court at Paragould on an information charging him with obtaining money under false pretenses. The original information on which this hearing was held in the Municipal Court is brought forward in the record and it alleges that the offense was committed on February 5, 1954. It appears, however, that some other day of February had been first inserted, then scratched out or over and the figure "5" substituted.

Appellant filed a Motion for a New Trial containing twenty-three assignments of error, most of which refer to alleged errors during the trial and some refer to newly discovered evidence. We will first consider the five separate assignments discussed in appellant's brief, and then we will consider more generally those assignments not specifically discussed by appellant.

1. Before the trial began appellant made an oral motion to the court to grant a continuance on the ground of surprise, stating that the information on which he is being tried alleged the offense to have occurred on February 5, 1954, whereas in the preliminary hearing the

information charged the offense to have been committed on February 19, 1954. The trial court refused appellant's motion for a continuance, and in doing so we think there is shown no abuse of discretion. There was a short discussion before the court in which the State's attorney contended that the first information also contained the date of February 5. If, however, the first information did contain the later date we cannot possibly see how appellant was thereby deluded into failing to properly prepare his defense. The record shows that appellant's attorney was present at the hearing in the Municipal Court and had an opportunity there to know the nature of the offense of which he was charged. It is admitted that no definite date was established as the day the offense was committed, but the testimony does abundantly establish that it was on or about February 12th, and there can be no doubt that appellant had full knowledge of the exact offense for which he was being tried and the approximate date thereof. All testimony related to only one transaction when the money was taken or stolen, and that was at the Paragould cabin. It is not necessary that the information shall specify the exact date of the offense unless such date is a necessary element of the alleged crime, and it was not in this case. See *Haller* v. *State,* 217 Ark. 646, 232 S. W. 2d 829; *James* v. *State,* 110 Ark. 170, 160 S. W. 1090, and Ark. Stats., § 43-1015. The matter of allowing or refusing a motion for continuance is addressed to the sound discretion of the trial court. See *French* v. *State,* 205 Ark. 386, 168 S. W. 2d 829.

2. Appellant insists it was error for the court to permit the prosecuting witness, Woodrow Kelly, to detail a conversation he had with Artie Bell out of his hearing and presence.

Several objections were made by appellant's attorney, and the court admitted the testimony conditioned on a further showing relative to a conspiracy between appellant and Bell.

We do not examine the record to see whether the objections were valid or the testimony competent for the

reason that the assignment of error in appellant's Motion for a New Trial is too indefinite. The assignment was for "admitting incompetent, irrelevant, immaterial and prejudicial evidence offered by the State." Practically this same assignment was held insufficient in *Lomax* v. *State,* 165 Ark. 386, 264 S. W. 823.

3. It is also insisted that appellant was entitled to an instructed verdict of not guilty because he was not identified as the man who committed the offense, but we do not agree. The testimony does show that appellant represented his name to be "Johnson" and there was testimony by the operators of the tourist cabin that they did not see appellant on the day the offense was committed, but the testimony of Mr. and Mrs. Kelly and others is abundant to identify appellant as the person charged and tried. He was positively identified at the trial as the man who represented himself as "Johnson" and who took the money.

4. Contrary to appellant's contention, there is no lack of testimony from which the jury could find that appellant actually carried away the $3,000.00 belonging to Kelly, and that it was never returned. The testimony must be viewed in the light most favorable to the State and the verdict of the jury must be supported only by substantial evidence. The uncontradicted testimony of Kelly is that he gave appellant his $3,000.00 in the tourist cabin at Paragould; that appellant first put the money in a bathtub and then took it out and put it in the press or "money making" machine; that later appellant left and was not seen by Kelly again until he was apprehended by the officers, and; that after appellant left he and Bell opened the press and found about $63.00 which he turned over to the officers, and that he never recovered the rest of his money. The last time Kelly saw his money it was in the possession of appellant.

5. It is alleged that misconduct on the part of the sheriff in connection with the jury amounts to reversible error, but again we disagree. On Motion for a New Trial affidavits were attached alleging that the sheriff went

into the jury room and stayed there until a verdict was reached. Rebutting this the sheriff and two jurors stated that this was positively not true. They explained that when the jury retired to its room, the sheriff, being so directed by the court, went to the jury room before the jury began deliberations and made arrangements for chairs for all jurors; that the sheriff was not in the room at any time while they were deliberating and made no statement to any juror concerning the case. The court, of course, considered the affidavits and this testimony and we cannot say that it was an abuse of discretion to refuse a new trial.

*Other Contentions by Appellant.* Appellant asks for a reversal on the ground that Kelly was not a competent witness because of insanity, but this is not borne out by the testimony. Kelly's father testified that Woodrow Kelly was previously in a private mental hospital for a period of ten weeks because of a nervous breakdown; that while his son was there he took over the operation of his business, and; that after his son was discharged he returned and continued his business as usual. Also the record fails to disclose any objection on this ground.

Several assignments of error are based on the sufficiency of the evidence to sustain the conviction, but, in our opinion this objection is not well taken. In addition to the direct testimony of Woodrow Kelly there is the testimony of Joe Cosner, a member of the Arkansas State Police, who testified that Kelly came to the jail and made a complaint about the loss of his money; that he went with Kelly and the sheriff to pick up Bell; that the so-called money making device, a suitcase and some bottles, were found in Bell's automobile; that the device was still wet and had some $63.00 in it; that Kelly gave him the license number of appellant's car which upon investigation showed that the car belonged to appellant.

Some contentions made by appellant are based on newly discovered evidence, but they need not be considered because it appears there are no supporting affidavits relative to a proper showing of diligence. See *Ward* v. *State,* 85 Ark. 179, 107 S. W. 677.

Having found no reversible error in any of the appellant's assignments, the judgment of the trial court is affirmed.