Joe Henry JOHNSON *v.* STATE of Arkansas

CR 86-150                                    732 S.W.2d 817

Supreme Court of Arkansas
Opinion delivered July 6, 1987

*Lohnes T. Tiner* and *Chet Dunlap*, for appellant.

*Steve Clark*, Att'y Gen., by: *Lee Taylor Franke*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. This is a child sexual abuse case in which the appellant was convicted of raping the nine-year-old son (the boy) of the woman with whom he was living (the mother). We find that one of the appellant's eight points of appeal requires reversal. It was prejudicial error for the trial court to have permitted the physician who examined the alleged victim to state, albeit indirectly, that the boy had been sexually abused. The remaining points will be addressed only to the extent it may be helpful in the event of a retrial.

The appellant and the mother had lived together for eight years. Living with them was the boy, who was the mother's son but not the son of the appellant, and a younger daughter who was fathered by the appellant.

At the trial the boy testified that the appellant was planning to go fishing on April 27, 1985, with the boy and two other men. As the plans developed, a decision was made that it would be an overnight trip, and thus the boy could not go. He testified that he became angry and went into the house where his mother whipped him for picking on his little sister. He then told his mother that the appellant had sexually molested him. His mother took him to a hospital where he told the examining doctor, a pediatrician, the same thing. The boy then testified that his statements about the appellant had been untrue, as had his subsequent, similar, statements to a police officer, social worker, and deputy prosecutor.

The testimony of other witnesses indicated that the boy had accused the appellant of having anal and oral intercourse with him and then recanting the accusation and then recanting the recantation.

Police officers testified that the appellant, during questioning after his arrest, admitted rubbing his penis around the boy's anus and saying that "it might have slipped in." They said when they began questioning the appellant he refused to permit them to tape record his statement. After they had questioned him, they asked him to sign a written version of his statement, and he said he

would not sign anything until after he had talked with a lawyer. At that point the questioning ceased. The appellant denied having made any such admission to the officers.

The evidence against the appellant thus consisted of (1) the officers' testimony about the appellant's statement, (2) the doctor's statement about what the boy had told him and his opinion that the boy had been abused, and (3) the statements of various persons about what the boy had told them when he accused the appellant and when he took back his accusations.

## 1. The Doctor's Opinion

The doctor who examined the boy testified he found no physical evidence of the anal intercourse the boy said had taken place that day. The doctor said that lack of such evidence would not rule out the possibility that it had occurred. He testified that the boy told him the sexual relationship with the appellant had existed for some months and the acts had occurred on several occasions. The prosecutor then asked the doctor if he had examined many other children for alleged sexual abuse. The appellant objected, and at that point wrangling in bench conferences and otherwise out of the hearing of the jury began over whether the doctor could express an opinion whether the boy in this case had been sexually abused.

The court refused to allow the doctor to express his opinion whether the boy had told him the truth. However, the court allowed the doctor to give "an opinion as to whether or not child abuse existed." The appellant objected, contending the doctor had no basis for such an opinion other than the boy's out-of-court statement. The court responded that the doctor could give his opinion based upon "history, coupled with the physical facts, the living conditions that his parent related, . . . and the facts and circumstances at hand ; . . ." The appellant argued that the "history," and the completely negative physical examination were the only bases the doctor could have had for his opinion. The court said the question could be asked and if the appellant wished to cross-examine on the bases for the opinion he could do so. The doctor had been admonished not to say his opinion was based solely on his belief of what the boy told him. When the jury returned to the courtroom, the questioning went like this:

## ERRATA

*292 ARKANSAS REPORTS at page 637*

Detach at perforation, moisten the back, and paste over the first four lines of text on page 637 of *Johnson v. State:*

BY MR. HUNTER [the prosecutor]:

Q. Doctor Kemp, during the time that you talked to [the boy] and examined him, what was his demeanor, tone of voice, that sort of thing?

BY MR. HUNTER [the prosecutor]:

Q. Doctor Kemp, during the time that you talked to [the boy] and examined him, what was his demeanor, one of voice, that sort of thing?

A. He seemed very concerned. Somewhat frightened. Worried. Very tense, anxious, and nervous. Obviously upset. Somewhat—obviously embarrassed with the conversation, and what he was saying to me.

Q. Ok. And you've indicated, Doctor Kemp, by pointing to the genital area, and the rectal area how he described what happened to him.

Did [the boy] ever use words, particular words to describe what he told you this defendant did to him?

A. He used words like his thing, and I would say, "What do you mean his thing" And he would—he would say, "Well, you know what I mean." And I would say, "No, . . ., what do you mean." And he would then point to his own penis and say, "This is what I mean, and I said, "You mean this is what you're talking about when you say his thing," and he would say, "Yes." Descriptions like that.

Q. Do you remember how he referred to his hind part?

A. He initially pointed to his rectal area in—in describing where the thing was placed.

Q. Did he refer to it ever as his bottom?

A. Yes, he used that term once.

Q. Do you remember in what connection he referred to his hind part as his bottom?

A. He kept saying to me that he—he put his thing in my bottom, or—or point—he would point say, you know, back here.

Q. Doctor Kemp, based upon your examination of [the boy], the history that you took, including his living circumstances, and physical examination, did you formulate an opinion to within a reasonable degree of medical certainty, as to whether or not [the boy] had been sub-

jected to sexual abuse?

A. Yes, I did.

Q. And Doctor Kemp, will you tell the ladies and gentlemen of the jury, please, what that opinion is?

A. I feel like I could not ignore the child's comments to me. His sincerity—

MR. TINER [defense counsel]:

Judge, I'm objecting. The answer is not responsive.

MR. HUNTER:

Your Honor, he's entitled to explain what his opinion was based on.

THE COURT:

Doctor, you said you formed an opinion. Can you state in general terms what the opinion was relative to child molestation or abuse?

A. I had an opinion based on the history that this child gave me, and my experience in dealing with children through the years, that an act had occurred that I considered detrimental to this child's health.

MR. TINER:

Judge, may we approach the Bench?

THE COURT:

Yes.

(REPORTER'S NOTE: THE FOLLOWING IS A BENCH CONFERENCE THAT TOOK PLACE OUT OF THE HEARING OF THE JURY).

MR. TINER:

Judge, at this time, we're going to move for a mistrial because he said, "Based upon the history that the child gave him, and based upon examining other children." And that's what it's based upon, and that is improper, and we're asking for a mistrial.

THE COURT:

I am going to deny your motion. And I am going to tell you at this time, Mr. Hunter, to go on to something else.

MR. HUNTER:

We are, your Honor.

MR. TINER:

We would ask the Court to admonish the jury to disregard the last statement that was made by the Doctor.

THE COURT:

No, that will be denied.

■■ It is apparent the doctor ultimately conveyed to the jury his opinion that the boy was telling the truth. It was error, however, for the court to have permitted the doctor to have given his opinion that "an act had occurred that [he] considered detrimental to this child's health." The only "act" to which the doctor's testimony could have referred was the anal intercourse related to him by the boy. The opinion of an expert that a child has been sexually abused is not objectionable on the basis that it is an opinion on the "ultimate issue." A.R.E. 704; *Jennings v. State,* 289 Ark. 39, 709 S.W.2d 69 (1986). The question here is whether such an opinion may be expressed if it is based on nothing but the "history" given by the child.

■■ In *Russell v. State,* 289 Ark. 533, 712 S.W.2d 916 (1986), a psychologist testified in a rape and child sexual abuse case that, based on her experience, what the child had told her was "consistent with a child who has been abused." The majority opinion said:

The appellant argues that the trial court erred in allowing the witness to answer whether the child's statements were consistent with sexual abuse because the subject matter was not beyond the common knowledge of the jury. The argument is meritorious.

The general test for admissibility of expert testimony is whether the testimony will aid the trier of fact in understanding the evidence or in determining a fact issue.

Unif. R. Evid. 702; *B&J Byers Trucking, Inc.* v. *Robinson,* 281 Ark. 442, 665 S.W.2d 258 (1984). An important consideration in determining whether the testimony will aid the trier of fact is whether the situation is beyond the trier of fact's ability to understand and draw its own conclusions. *B&J Byers Trucking, Inc.* v. *Robinson, supra.* Here, lay jurors were fully competent to determine whether the history given by the victim was consistent with sexual abuse.

Accordingly, we conclude the trial court erred in admitting the testimony. The issue then becomes whether the error was prejudicial. The State's case against the appellant was so strong, and the error so inconsequential, that we find no prejudice.

The overwhelming evidence came primarily from the victim and a pediatrician. The victim's testimony was explicit, graphic, and unequivocal . . . .

In the case before us now the error was prejudicial. The majority in *Russell* v. *State, supra,* found overwhelming evidence of the accused's guilt based on the child's graphic (and unrecanted) trial testimony relating the acts of the appellant. The evidence before us now can hardly be characterized as "overwhelming," as it consisted solely of the doctor's opinion, evidence of the inconsistent, out-of-court statements of the boy, and the disputed testimony with respect to the statement allegedly made orally by the appellant.

Although the evidence against the appellant was strong enough to be permitted to go to the jury, it was not of such overwhelming proportions as to make the error in allowing the doctor to give his opinion non-prejudicial.

*2. A.R.E. 803(25)(A) and the Confrontation Clause*

Testimony of witnesses as to what the boy had said about the appellant was admitted pursuant to A.R.E. 803 which provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . .

(25) (A) A statement made by a child under ten (10) years of age concerning any act or offense against that child involving sexual offenses, child abuse or incest is admissible in any criminal proceeding in a court of this State, provided:

1. The Court finds, in a hearing conducted outside the presence of the jury, that the statement offered possesses a reasonable likelihood of trustworthiness using the following criteria:

a. the age of the child

b. the maturity of the child

c. the time of the statement

d. the content of the statement

e. the circumstances surrounding the giving of the statement

f. the nature of the offense involved

g. the duration of the offense involved

h. the relationship of the child to the offender

i. the reliability of the assertion

j. the reliability-credibility of the child witness before the Judge

k. the relationship or status of the child to the one offering the statement

l. any other corroborative evidence of the act which is the subject of the statement

m. any other factor which the Court at the time and under the circumstances deems relevant and

appropriate

2. The proponent of the statement shall give the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement.

3. If a statement is admitted pursuant to this Section the Court shall instruct the jury that it is for the jury to determine the weight and credit to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factors.

4. This Section shall not be construed to limit the admission of an offered statement under any other hearsay exception or applicable rule of Evidence. . . .

The appellant's argument is that in *Ohio* v. *Roberts,* 488 U.S. 56 (1980), the Supreme Court said the Confrontation Clause of the Sixth Amendment requires, as a prerequisite to making an exception to the hearsay rule, that the witness whose out-of-court statement is to be discussed, *i.e.,* the declarant, be unavailable and that there be adequate indicia of reliability of the statement. The appellee points out that in this case the boy was not unavailable.

In *Ohio* v. *Roberts, supra,* the question was whether the testimony taken at a preliminary hearing could be used at the trial in the absence of the witness. After a general discussion of the history of the hearsay rule exceptions in the context of the Confrontation Clause, in which it was noted that both unavailability of the witness and indicia of reliability of the statement are required, the court said: "In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable." In this case the witness was present at the trial. He was also available for the equivalent of cross-examination, as the court allowed the appellant to call him as a hostile witness even though his testimony was favorable to the appellant.

If we were to terminate this portion of the opinion at this point, we might be interpreted as suggesting that in any case where the witness is present for the trial his prior out-of-court

statements may be substituted for live testimony as long as there are indicia of reliability of the prior statement. We do not mean to do that. In *United States* v. *Inadi,* ___ U.S. ___, 106 S.Ct. 1121 (1986), the Supreme Court considered whether the hearsay rule exception permitting admissibility of out-of-court statements of co-conspirators made in the course and furtherance of the conspiracy could be admitted despite the availability of the witnesses in question. The claim there, as here, was that *Ohio* v. *Roberts, supra,* required unavailability of the witness as a prerequisite to any exception to the hearsay rule. The Supreme Court said that case was hardly to be interpreted as a wholesale revision of the law of evidence, and that the unavailability requirement did not apply with respect to every exception to the hearsay rule. The Supreme Court noted that the unavailability requirement applied in situations where the testimony of the witness at the trial was to be the same as it had been when given out of court. Obviously the better testimony would be that given live, and cross-examination could then be much more meaningful. However, where the testimony in court can be expected to be substantially different from that given out of court, as in the case of a co-conspirator whose out-of-court statement was surreptitiously obtained, the reason for the unavailability requirement disappears. The question then becomes solely whether there are sufficient indicia of reliability to make an exception to the hearsay rule. With a touch of understatement, the Supreme Court observed:

> When the Government—as here—offers the statement of one drug dealer to another in furtherance of an illegal conspiracy, the statement often will derive its significance from the circumstances in which it was made. Conspirators are likely to speak differently when talking to each other in furtherance of their illegal aims than when testifying on the witness stand. Even when the declarant takes the stand, his in-court testimony seldom will reproduce a significant portion of the evidentiary value of his statements during the course of the conspiracy. [106 S. Ct. at 1126]

We find the same reasons apply to permit admissibility of the out-of-court statements of an alleged child abuse victim as applied to admit the statements of the alleged co-conspirators.

One of the witnesses who testified as to the boy's out-of-court statements accusing the appellant was a psychologist. As abstracted by the appellant, his testimony included the following:

> It is not unusual for children who have been sexually abused to recant. Often children that have been abused, when they become aware of the implications, coming forward and talking about the sexual abuse, quite often they will recant. Some of the implications which they become aware of are going to court, changes that it causes in the family, and the pain they perceive they are causing other family members.

The appellant has not argued that the boy's statements lacked sufficient indicia of reliability. We quote the psychologist's testimony solely for the purpose of showing it was his expert opinion that a child is likely to recant a statement about being abused sexually by a family member. Thus, in view of the common prospect, and here the known reality, of a great difference between trial testimony and out-of-court statements of the alleged victim, the unavailability requirement does not apply in this case any more than it did in *United States* v. *Inadi, supra.*

Although the appellant's primary argument under this point is the one about unavailability, he also contends that the application of A.R.E. 803(25)(A) in this case gave the prosecution an undue advantage not available in other cases as it permitted it to prove the crime by hearsay evidence and that that violated his rights to due process and equal protection of the laws. No authority is cited for this second proposition under this point, thus we will not address it. *Dixon* v. *State,* 260 Ark. 857, 545 S.W.2d 606 (1977). Should this become an issue upon retrial, we refer the parties and the court to Note, 83 *Colum. L. Rev.* 1745 (1983); Note, 98 *Harv. L. Rev.* 806 (1985); and Note, 13 *Pepperdine L. Rev.* 157 (1985).

### 3. The Appellant's Statement

The appellant argued he had asked for counsel at some point before or during the statement he gave to the police officers. They testified that he did not mention getting a lawyer until the appellant was asked to sign a written version of what he had told them. This was a credibility issue to be resolved by the trial court

in determining the admissibility of the testimony as to the appellant's statement. *Jackson* v. *State,* 284 Ark. 478, 683 S.W.2d 606 (1985).

## 4. Bill of Particulars

The appellant was charged with violating Ark. Stat. Ann. § 41-803 "on or about April 27, 1985[,] in Poinsett County." He filed a motion for a bill of particulars asking that the exact place and time of the acts alleged be stated. The motion was denied.

■ A bill of particulars as to the precise time the offense was committed need not be granted unless the time is material to the allegation. Ark. Stat. Ann. § 43-1015 (Repl. 1977); *Payne* v. *State,* 224 Ark. 309, 272 S.W.2d 829 (1954); *Venable* v. *State,* 177 Ark. 91, 5 S.W.2d 716 (1928).

■ Charging the location at which an offense occurred is necessary to establish the jurisdiction of the court. Ark. Stat. Ann. § 43-1016 (Repl. 1977). Therefore, it is sufficient if the court having jurisdiction of the offense alleged can be determined from the information. *Haller* v. *State,* 217 Ark. 646, 232 S.W.2d 829 (1950).

## 5. What is a Statement?

■ The appellant contended that when the boy was questioned by a police officer his responses consisted only of "yes and no" answers to questions asked, and that those responses to questions did not constitute a "statement" by the alleged child abuse victim contemplated by A.R.E. 803(25)(A). While this court has not defined "statement" in this context, other courts have done it in similar situations. For example, in *United States* v. *Katsougrakis,* 715 F.2d 769 (2nd Cir. 1983), *cert. den.* 104 S.Ct. 704 (1984), a nod of the head in response to a question was held to be a statement. In *United States* v. *Guzman,* 754 F.2d 482 (2nd Cir. 1985), questions were held admissible to give meaning to responses. In our opinion, the responses of the alleged victim in this case constituted clear assertions and were sufficient to be considered a "statement" as contemplated in the rule.

## 6. Conflicting Testimony

A tape recording of the boy's statement to a police officer was played for the jury. A social worker who was present when the statement was made testified she heard the boy make a statement which did not appear on the tape. The officer testified the tape contained all that was said. The appellant claims this conflict in testimony presented by the prosecution made the tape so untrustworthy that it should not have been admitted. Such a conflict goes only to the weight to be given to the testimony presented by the prosecution and not to its admissibility. *See Roleson* v. *State,* 277 Ark. 148, 640 S.W.2d 113 (1982).

## 7. Evidence of Other Crime

When the tape recording of the boy's statement was to be played for the jury, the appellant objected on the basis that the statement was hearsay, the rule does not permit tape recording as opposed to statements, and the witness (presumably meaning either the officer or the boy) was present in court and could testify to what the statement had been. The appellant also argued that the tape contained prejudicial evidence of another offense, that is, the boy was asked if the appellant had ever "fooled around" with the boy's sister. Focusing on that basis for the objection, the court asked what the response to the question was. At that point the appellant's counsel said, "alright, the tape is inaudible to that, Judge. I don't think—I don't think the jury's gonna be able to hear the tape anyway." The judge said he would permit the tape to be played. The appellant then asked that his objection be treated as a continuing one.

We need not decide whether the objection was waived or not. If this case is retried, it is clear that the court should review the tape before it is admitted to ascertain if it contains evidence that the appellant committed another crime and take appropriate action to see to it that any such evidence does not get before the jury.

## 8. The Boy's Age

The appellant contends that when the boy made his out-of-court statements accusing the appellant he was nine years old, but at the time of the trial he was ten. The appellant argues that

A.R.E. 803(25)(A) was designed to protect a young child from the trauma of a trial, and thus the critical age is the age of the child at the time of the trial rather than the age at the time the statement was made, and the rule thus does not permit the statements to be admitted.

The birth certificate of the boy showed that his tenth birthday occurred May 3, 1985. His accusatory statements were given on April 27 and 30, 1985. His statements recanting the accusations occurred after May 3, 1985. The court ruled that it would be unfair to the appellant to exclude the boy's statements made after May 3, 1985, in the circumstances of this case, and he admitted both the accusatory statements and the recantations citing A.R.E. 803(24).

Although the judge's ruling was probably not responsive to the appellant's objection, we find no error here. We have found no authority, and the appellant has cited none, supporting the appellant's interpretation of Rule 803(25)(A) as meaning that the declarant must be less than ten years old at the time of the trial as opposed to the time the statement was made. The rule refers to a "statement made by a child under ten years" as being admissible. Our view is that had the authors of the rule meant to restrict it to a statement made by a child "under ten years of age at the time of the trial" they would have said so. It seems clear to us that the Rule permits the statements to be admitted in this case because they were "made by a child under ten years."

Reversed.

PURTLE, and DUDLEY, JJ., concur.

HAYS, J., dissents.

JOHN I. PURTLE, Justice, concurring. Although I agree with the result, I write a concurring opinion primarily because of the misleading statement of the majority:

> If we were to terminate this portion of the opinion at this point, we might be interpreted as suggesting that in any case where the witness is present for the trial his out-of-court statements may be substituted for live testimony as long as there are indicia of reliability of the prior statement. We do not mean to do that.

The opinion actually accomplishes exactly what it says it does not do. But in the words of Humpty Dumpty—the words mean what the majority says they mean. The opinion does not hold that in all cases where a witness is present at trial his prior out-of-court statements may be substituted for live testimony. However, the opinion does hold that, pursuant to A.R.E. 803(25), in all cases where the declarant is the alleged child victim of sexual/physical abuse and is present for the trial, his out-of-court statements may be substituted for live testimony as long as there are indicia of reliability of the prior statements. The alleged child victim was present in the case under consideration and was in fact questioned by defense counsel during the course of the trial.The majority misinterprets *Ohio* v. *Roberts,* 448 U.S. 56 (1980). There the transcript of the witness' preliminary hearing testimony was allowed into evidence because the witness was unavailable at the trial. The former testimony was taken subject to the full right of confrontation, i.e. taken under oath and subject to full and effective cross-examination. Further, the state had made substantial efforts to compel the witness' attendance at the trial of Roberts.

The thrust of *Roberts* was that the right to confrontation was not violated because the witness could not be located and the evidence indicated that her prior testimony bore sufficient indicia of reliability that it afforded the trier of fact a satisfactory basis for the determination of the truth of the former testimony. After canvassing the many previous cases that had examined the relationship between the Confrontation Clause of the Sixth Amendment and the many exceptions to the hearsay rule, Justice Blackmun, writing for the Court, stated:

> The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. . . .

> The second aspect operates once a witness is shown to

be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that "there is no material departure from the reason of the general rule."

The testimony admitted in *Roberts* included questioning of the witness by Roberts' attorney. Confrontation was not only afforded, it was utilized.

What the majority in the present decision appears to overlook is that in *Roberts* the witness or declarant was, in fact, unavailable. The majority at one point, without expressly doing so, attempts to distinguish *Roberts* on the basis that in the present case the declarant was not unavailable. It is precisely because the witness was not unavailable that the testimony should not have been admitted. To hold otherwise flies right smack dab in the face of both the Confrontation Clause of the Sixth Amendment and the common law rule against the admission of hearsay. The Arkansas act attempts to allow any and all (the more the better?) recitations of prior statements even though the declarant is available for trial and cross-examination. Neither this Court nor the General Assembly possesses the power to nullify this fundamental principle of Anglo-American law against the admission of such evidence.

The majority reaches its conclusion in the present case by analogy to *U.S.* v. *Inadi*, ___ U.S. ___, 106 S.Ct. 1121 (1986), where the statements in dispute were those of an unindicted co-conspirator. The admission of the out-of-court statements of a co-conspirator is founded on the concept of agency. See A.R.E. 801(d)(2)(v). To compare the out-of-court statements of an alleged child abuse victim with the statements of co-conspirators in a drug ring seems, at best, rather strained. The Court in *Inadi* stated:

> If the declarant is available and the same information can be presented to the trier of fact in the form of live testimony, with full cross-examination and the opportunity to view the demeanor of the declarant, there is little justification for relying on the weaker version. When two versions of the same evidence are available, longstanding

principles of the law of hearsay, applicable as well to Confrontation Clause analysis, favor the better evidence.

The Court did not reject the confrontation requirement but rather reaffirmed it in the language quoted above. The opinion further stated: "These same [confrontation] principles do not apply to co-conspirators' statements." The opinion expressly distinguished *Roberts* where it stated:

> The admission of co-conspirators' declarations into evidence thus actually furthers the "Confrontation Clause's very mission" which is to "advance 'the accuracy of the truth-determining process in criminal trials.'"

Moreover, the reasoning behind the decision in *Inadi* has been brought into question by the Supreme Court's recent decision in *Cruz* v. *New York,* ___ U.S. ___, 107 S. Ct. 1714 (1987). Justice Scalia, writing for the Court, held that where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant, . . . the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him.

*Ohio* v. *Roberts,* supra, is still valid law on this subject according to the opinion in *Kentucky* v. *Stincer,* ___ U.S. ___, 107 S. Ct. 2658 (1987), where the Court considered a Kentucky statute which closely resembles A.R.E. 803(25). In *Stincer* the trial court conducted an in chambers hearing, at which the accused was excluded, to determine the competency of two child victim witnesses. The accused's counsel was present at the hearing. The hearing was held out of the presence of the jury and the defense counsel was allowed full cross-examination. The *Stincer* holding is limited to the question of whether due process and confrontation were denied the appellant by excluding him from the hearing at which the reliability-credibility of the seven and eight year old victims was determined. The Court held that the accused's rights were not violated. I agree with the decision. Both reliability and confrontation were preserved. The majority opinion in this case preserves neither.

I recognize the child sexual molestation problem in this country is serious and demands immediate attention, not only

from the courts but from the legislature and the general public. The effort to deal with this problem must be undertaken with all deliberate speed. However, deliberate is the word of caution which we must always keep in mind. History has proven time and again that decisions hastily made in the heat of anger, or in a state of excitement, are frequently found to have been unwise.

Children are apt to be confused on cross-examination by a lawyer. They frequently cannot recall exact dates, places and complete details of prior experiences. They may be reluctant or scared, or they may be vindictive. Also, children sometimes respond in a manner intended to please the parent or interviewer. These are but a few of the matters which must be considered in deciding the trustworthiness of hearsay statements. These problems must be resolved by the simple process of the trial court making a prior independent evaluation of the credibility-reliability or trustworthiness of not only the child witness, but also of each prior hearsay statement. Corroboration of such hearsay testimony is mandatory if we are to preserve our system of justice. The child in this case, a nine year old boy, made the accusation after the appellant refused to take the child on an overnight fishing trip. After the appellant told the alleged victim he could not go, the child went inside the house and started trouble with his little sister, for which his mother whipped him. He then told his mother the appellant had been molesting him. The mother took him to a pediatrician the same day. The doctor found absolutely no evidence that the child's accusation was true. The child said the appellant had done it to him that day and for several months before. The child subsequently recanted his story.

The doctrine of exclusion of hearsay existed long before the Constitution and Bill of Rights were adopted by the people of the United States. The hearsay exclusion was a basic tenet of the common law. Trial by depositions was found to be fundamentally lacking in trustworthiness and thus such Star-Chamber proceedings were swept aside by the adoption of the Sixth Amendment. Justice Marshall, in his dissenting opinion in *Inadi,* 106 S.Ct. at 1129, remarked: "The plight of Sir Walter Raleigh, condemned on the deposition of an alleged accomplice who had since recanted, may have loomed large in the eyes of those who drafted that constitutional guarantee." Exceptions have eroded the Confrontation Clause and the rule against hearsay. However, the

present erosion seems not to be founded so much upon the test of reliability in search of the truth as it is upon the convenience of the state. Exceptions to the rule against hearsay must be permitted only for a compelling reason, and then the exceptions should be narrowly defined and strictly construed. Especially in light of the procedure providing for videotaped testimony of the child, A.S.A. § 43-2036, which retains most of the safeguards attendant to a trial, I would require an affirmative showing of reliability and unavailability.

The inherent untrustworthiness of hearsay, as clearly demonstrated in the present case, led to the development of the hearsay exclusion doctrine in the common law. The exceptions to the hearsay doctrine were few in number and were founded upon a showing of reliability *and* necessity. The hearsay testimony in this case should be required to pass this two-part test demanded by *Ohio* v. *Roberts.* We have no indicia, even on appeal, of the circumstances relating to reliability at the time these hearsay statements were allegedly made. No case I have read holds that a statute as broad as 803(25) is constitutional. See my concurring opinion in *Charles Wesley Cogburn* v. *State,* 292 Ark. 564, 732 S.W.2d 807 (1987). Therefore, I insist the Arkansas procedure is unconstitutional.

ROBERT H. DUDLEY, Justice, concurring. I concur solely to issue a caveat to the trial judges hearing criminal cases.

The Uniform Rules of Evidence are perhaps the most outstanding of the Uniform Laws. The trial judges and trial lawyers have grown accustomed to the use of them and appreciate using rules which are located in one place, rather than in scattered cases. For the first time since their adoption, the courts are faced with the question of whether a rule of evidence is in existence.

The Uniform Rules were adopted as the Arkansas Rules of Evidence by an invalid session of the General Assembly. *See Ricarte* v. *State,* 290 Ark. 100, 717 S.W.2d 488 (1986). We declared their adoption invalid, but then, under our rule-making authority, adopted them as court rules. *Ricarte, id.* at 104. The Legislature later enacted Rule 803(25), but this Court has not adopted such a rule, and probably will not do so.

The question then becomes whether this Court or the

General Assembly has the authority to promulgate rules of evidence. This separation of powers issue was not raised in the case at bar and is not answered by today's opinion.

Obviously, the trial judges are going to be faced with the question of whether Rule 803(25) is a part of the Rules of Evidence. If I were a trial judge faced with such a decision, I would carefully consider the following language in the *Ricarte* case, *supra,* at 104:

> Under our own rule-making power and under existing statutory authority, as of this date we adopt the Uniform Rules of Evidence as the law in Arkansas. We have no misgivings about either the validity of our action or its wisdom, but a few comments are appropriate.
>
> For more than fifty years there has been a steady trend in favor of committing to the courts the regulation of practice and procedure. Dean Wigmore took a strong stand in the matter as early as 1928. Editorial, 23 Ill. L. Rev. 276. Many others agreed. In 1940 the American Bar Association chose as the subject for its annual Ross essay contest: "To What Extent May Courts under the Rule-Making Power Prescribe Rules of Evidence?" The winning essay by Prof. Thomas F. Green, Jr., argued persuasively that all rules of evidence are properly subject to the courts' rule-making power. 26 A.B.A.J. 482 (1940). Other pertinent articles include another Ross essay submitted by Charles A. Riedly, 26 A.B.A.J. 601 (1940); Morgan, "Rules of Evidence—Substantive or Procedural?," 10 Vanderbilt L. Rev. 467 (1957); and Joiner and Miller, "Rules of Practice and Procedure: A Study of Judicial Rule Making," 55 Mich. L. Rev. 623 (1957).
>
> Arkansas has kept step with the progress made elsewhere. Our Constitution of 1874 confers upon the Supreme Court "a general superintending control over all inferior courts of law and equity." Art. 7, § 4. We note in passing that the Supreme Court of New Mexico relied on almost that identical language in the New Mexico constitution as authority for the court's action in adopting the Uniform Rules of Evidence as the law in that state. *Ammerman* v. *Hubbard Broadcasting, Inc.,* 89 N.M. 307,

551 P.2d 1354 (1976), where the court analyzed in depth its rule-making power.

In 1971, the Arkansas legislature used mandatory words in committing the regulation of criminal practice and procedure to this court:

> The Supreme Court of the State of Arkansas shall have the power to prescribe, from time to time, rules of pleading, practice, and procedure with respect to any or all proceedings in criminal cases.

Ark. Stat. Ann. § 22-242 (Supp. 1985). That action was not an improper delegation of legislative power; it merely recognized the court's inherent power. *Miller* v. *State,* 262 Ark. 223, 555 S.W.2d 563 (1977). The statutory language quoted above was repeated in a 1973 statute by which the legislature recognized the Supreme Court's power to prescribe rules with respect to procedure in civil cases. § 22-245. Under those statutes, we have adopted the Rule of Criminal Procedure and the Rules of Civil Procedure. More recently we adopted rules for the certification of court reporters. We are not the first court to adopt the Uniform Rules of Evidence by judicial action. That step has been taken not only in New Mexico, as mentioned earlier, but also in Florida, *In re Florida Evidence Code,* 372 So.2d 1369 (1979); in Montana, Montana Rules of Evidence, Ch. 10, Mont. Code Ann. (1984); and in Wisconsin, *In re Promulgation of Rules of Evidence,* 59 Wis. 2d R1-R377 (1973). The Supreme Court of the United States adopted the Federal Rules of Evidence pursuant to federal statutes quite similar to the 1971 and 1973 statutes enacted in Arkansas. See Reporter's Note, 409 U.S. 1132 (1972).

STEELE HAYS, Justice, dissenting. I find no error in the trial court permitting Dr. Charles Kemp to express an opinion as a medical expert that this child had been sexually abused. The trial judge told the doctor not to state that the boy was testifying truthfully, and not to rely solely on what the boy had told him. Working within those limits the doctor was asked if he could formulate an opinion as to sexual abuse with a reasonable degree

of medical certainty based on the history he took, the living circumstances, and physical findings; the doctor said he could and proceeded to state it.

The jurors doubtless recognized the doctor was merely stating an opinion and they were not bound by it in the slightest. The defense was free to show on cross-examination whether it was based on fact or on conjecture and that is how we ought to leave it, to the judgment of the trial court. We have recognized that the trial court is in the best position to weigh all the factors affecting the admissibility of evidence, *McQueen* v. *State,* 283 Ark. 231, 675 S.W.2d 358 (1984), and we should, I believe, be restrained in overruling those actions.